# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| **IN RE REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE & ERISA LITIGATION,** | **CASE NO. 2:09-md-2009** |
| **W. Thomas Small, Jr.,** | |
| **Plaintiff,** | |
| **v.** | |
| **RMK High Income Fund, Inc., RMK Strategic Income Fund, Inc., RMK Advantage Income Fund, Inc., RMK Multi-Sector High Income Fund, Inc., Morgan Keegan & Company, Inc., Regions Financial Corporation, MK Holding, Inc., Morgan Asset Management, Inc., James C. Kelsoe, Jr., Carter E. Anthony, Brian B. Sullivan, Joseph Thompson Weller, Allen B. Morgan, and J. Kenneth Alderman,** | **Case No. 2:13-cv-02654** |
| **Defendants.** | |

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Peter S. Fruin
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000
(205) 254-1999 (fax)
pfruin@maynardcooper.com

Shepherd D. Tate
Michael A. Brady
**BASS, BERRY & SIMS PLC**
The Tower at Peabody Place
100 Peabody Place
Memphis, Tennessee 38103
(901) 543-5900
(901) 543-5999 (fax)
state@bassberry.com
mbrady@bassberry.com

{02708562.9}

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iii

INDEX OF EXHIBITS AND ABBREVIATIONS ......................................................... ix

PRELIMINARY STATEMENT ....................................................................................... 1

STATEMENT OF FACTS ................................................................................................ 3

I.     THE FUNDS AND PLAINTIFF'S ALLEGATIONS ........................................... 3

II.    THE DEFENDANTS ............................................................................................... 5

III.   THE PLAINTIFF ..................................................................................................... 5

MOTION TO DISMISS STANDARD ............................................................................. 7

ARGUMENT ..................................................................................................................... 9

I.     PLAINTIFF'S CLAIMS ARE TIME-BARRED BY THE APPLICABLE
STATUTES OF REPOSE .................................................................................... 9

     A.    The Applicable Statutes of Repose Bar Plaintiff's Claims ...................... 9

          1.    Sections 11, 12(a)(2), and 15 of the 1933 Act are governed by a
three year statute of repose that bars Plaintiff's claims. ............................ 9

          2.    Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 are
governed by a five-year statute of repose that bars Plaintiff's
claims. ....................................................................................................... 10

          3.    The five-year statutes of repose bars Plaintiff's claims under the
Tennessee and Mississippi Securities Acts ............................................... 11

          4.    Plaintiff's Tennessee Consumer Protection Act claim is barred by
the five-year statute of repose. .................................................................. 11

     B.    Tolling Does Not Save Plaintiff's Claims. .............................................. 11

II.    PLAINTIFF LACKS STANDING TO ASSERT CLAIMS UNDER SECTION
12(A)(2) OF THE 1933 ACT .............................................................................. 12

III.   PLAINTIFF'S FRAUD CLAIMS ARE DUE TO BE DISMISSED BECAUSE
PLAINTIFF FAILS TO PLEAD RELIANCE ................................................... 13

IV.    PLAINTIFF'S CLAIMS ARE DERIVATIVE, BELONG TO THE FUND COMPANIES, AND CANNOT BE BROUGHT ON AN INDIVIDUAL BASIS ..........15

V.    PLAINTIFF CANNOT SATISFY THE PLEADING REQUIREMENTS FOR HIS FRAUD CLAIMS ........................................................................................17

    A.    The PSLRA Imposes Heightened Pleading Requirements Which Plaintiff Fails to Meet. ......................................................................................18

        1.    Plaintiff's allegations fail to show loss causation as required by the PSLRA. ..............................................................................................18

        2.    Plaintiff's claims under the 1933 and 1934 Act fail to meet the heightened pleading requirements for scienter under the PSLRA.............20

            (a)    Required State of Mind ...............................................................20

            (b)    Strong Inference of Scienter .......................................................24

    B.    Plaintiff has Failed to Plead his Claims with Particularity as Required by Rule 9(b). ...................................................................................................25

VI.    PLAINTIFF FAILS TO ESTABLISH THAT ANY OF THE FUNDS' PUBLIC FILINGS CONTAINED ACTIONABLE MISREPRESENTATIONS OR OMISSIONS ..................................................................................................26

    A.    The Funds' Offering Documents Disclosed the Risk Associated with an Investment in the Funds. .............................................................................26

    B.    The Funds Disclosed Their Concentration in ABS and MBS. .............................28

    C.    Plaintiff Has Failed to Plead Any Actionable Misrepresentations or Omissions With Respect to Valuation. ...............................................................29

    D.    Plaintiff Fails to Allege Facts that Would Establish that the Funds' Choice of a Benchmark Index Supports a Claim under the Securities Laws....................30

VII.    PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO DEMONSTRATE THAT ANY OF THE DEFENDANTS ARE CONTROL PERSONS UNDER SECTIONS 15 OR 20(A) ..................................................................................31

CONCLUSION.................................................................................................34

CERTIFICATE OF SERVICE .............................................................................36

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*American Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) ................................................................................................ 11

*Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton,*
    597 F.3d 330 (5th Cir. 2010) ................................................................................ 19

*Argiropoulos v. Kopp,*
    2007 U.S. Dist. LEXIS 22351 (D. Md. Mar. 26, 2007) ........................................ 16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ........................................................................................... 7, 24

*Azzolini v. CorTS Trust II,*
    2005 U.S. Dist. LEXIS 31853 (E.D. Tenn. Sept. 16, 2005) ............................. 32, 33

*Azzolini v. CorTS Trust II for Provident Fin. Trust I,*
    2005 U.S. Dist. LEXIS 38454 (E.D. Tenn. Dec. 14, 2005) .................................... 20

*Bayberry Assocs. v. Jones,*
    783 S.W.2d 553 (Tenn. 1990) ................................................................................ 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ................................................................................................ 7

*Bokat v. Getty Oil Co.,*
    262 A.2d 246 (Del. 1970) ....................................................................................... 15

*Calaway ex rel. Calaway v. Schucker,*
    193 S.W.3d 509 (Tenn. 2005) .................................................................................. 9

*Casden v. Burns,*
    306 F. App'x 966 (6th Cir. 2009) .......................................................................... 16

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ............................................................................................... 33

*Chelsea Assoc. v. Rapanos,*
    527 F.2d 1266 (6th Cir. 1975) ............................................................................... 13

*Coffey v. Foamex L.P.,*
    2 F.3d 157 (6th Cir. 1993) ..................................................................................... 25

*Cowin v. Bresler,*
    741 F.2d 410 (D.C. Cir. 1984) ............................................................................... 16

*D.E. & J. Ltd. P'ship v. Conaway,*
  284 F. Supp. 2d 719 (E.D. Mich. 2003),................................................................... 3

*D.E. & J. Ltd. P'ship v. Conaway,*
  133 F. App'x 994 (6th Cir. 2005)........................................................................... 33

*Dura Pharm., Inc. v. Broudo,*
  544 U.S. 336 (2005)...................................................................................... 18, 19

*Ex Parte Morgan Asset Management, Inc.,*
  86 So. 3d 309 (Ala. 2011)..................................................................................... 17

*Ex parte Regions Financial Corp.,*
  67 So. 3d 45 (Ala. 2010)...................................................................................... 17

*Fed. Hous. Fin. Agency v. UBS Ams. Inc.,*
  712 F.3d 136 (2d Cir. 2013)................................................................................... 9

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.,*
  770 F. Supp. 2d 618 (S.D.N.Y. 2011)..................................................................... 12

*Frank v. Dana Corp.,*
  649 F. Supp. 2d 729 (N.D. Ohio 2009).................................................................... 34

*Gustafson v. Alloyd Co., Inc.,*
  513 U.S. 561 (1995).............................................................................................. 12

*Harvey v. Allstate Ins. Co.,*
  2004 U.S. Dist. LEXIS 27213 (W.D. Tenn. Aug. 23, 2004) ..................................... 9

*Hensley Mfg., Inc. v. ProPride, Inc.,*
  579 F.3d 603 (6th Cir. 2009) ................................................................................ 7

*Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.),*
  183 F.3d 542 (6th Cir. 1999) .............................................................................. 21

*Hunt v. Alliance N. Am. Gov't Income Trust, Inc.,*
  159 F.3d 723 (2d Cir. 1998)................................................................................. 31

*In re Accredo Health, Inc.,*
  2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) .................................... 13

*In re Am. Funds Fees Litigs.,*
  2005 U.S. Dist. LEXIS 41884 (C.D. Cal. Dec. 16, 2005) ..................................... 16

*In re Bridgestone Sec. Litig.,*
  430 F. Supp. 2d 728 (M.D. Tenn. 2006).................................................................. 3

*In re Citigroup ARS Litig.*,
    700 F. Supp. 2d 294 (S.D.N.Y. 2009)..................................................... 25

*In re Connetics Corp. Sec. Litig.*,
    542 F. Supp. 2d 996 (N.D. Cal. 2008) ..................................................... 8

*In re Estate of Davis*,
    308 S.W.3d 832 (Tenn. 2010)................................................................... 9

*In re First Marblehead Corp. Sec. Litig.*,
    639 F. Supp. 2d 145 (D. Mass. 2009) ..................................................... 19

*In re Goldman Sachs Mut. Funds Fee Litig.*,
    2006 U.S. Dist. LEXIS 1542 (S.D.N.Y. Jan. 17, 2006)......................... 15

*In re Huntington Bancshares Inc. Sec. Litig.*,
    674 F. Supp. 2d 951 (S.D. Ohio 2009) ................................................... 31

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    218 F.R.D. 76 (S.D.N.Y. 2003) ......................................................... 8, 25

*In re MRU Holdings Sec. Litig.*,
    769 F. Supp. 2d 500 (S.D.N.Y. 2011)..................................................... 24

*In re Oracle Corp. Sec. Litig.*,
    627 F.3d 376 (9th Cir. 2010) .................................................................. 19

*In re Reciprocal of Am. (ROA) Sales Practices Litig.*,
    2006 U.S. Dist. LEXIS 71808 (W.D. Tenn. Sept. 29, 2006)................... 15

*In re Regions Morgan Keegan Secs*,
    743 F. Supp. 2d 744 (W.D. Tenn. 2010)....................................... 17, 20, 22, 25, 28

*In re SCB Computer Tech., Inc. Sec. Litig.*,
    149 F. Supp. 2d 334 (W.D. Tenn. 2001)................................................. 20

*In re Societe Generale Sec. Litig.*,
    2010 U.S. Dist. LEXIS 107719 (S.D.N.Y. Sept. 29, 2010)..................... 24

*In re Sterling Foster & Co., Inc., Securities Litigation*,
    222 F. Supp. 2d 216 (E.D.N.Y. 2002) .................................................... 12

*Ind. State Dist. Council of Laborers v. Omnicare, Inc.*,
    583 F.3d 935 (6th Cir. 2009) .................................................................. 17

*Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*,
    2005 U.S. Dist. LEXIS 26837 (D. Md. Nov. 3, 2005) ........................... 16

*Kalnit v. Eichler,*
    85 F. Supp. 2d 232 (S.D.N.Y. 1999) ................................................................. 32

*Konkol v. Diebold, Inc.,*
    590 F.3d 390 (6th Cir. 2009) .......................................................................... 22

*La Pietra v. RREEF Am., LLC,*
    738 F. Supp. 2d 432 (S.D.N.Y. 2010) ......................................... 22, 26, 28, 29

*La. Sch. Emples. Ret. Sys. v. Ernst & Young, LLP,*
    622 F.3d 471 (6th Cir. 2010) .......................................................................... 21

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,*
    501 U.S. 350 (1991) ....................................................................................... 12

*Lemmer v. Nu-Kote Holding, Inc.,*
    2001 U.S. Dist. LEXIS 13978 (N.D. Tex. Sept. 6, 2001) ............................... 32

*Lentell v. Merrill Lynch & Co.,*
    396 F.3d 161 (2d Cir. 2005) ........................................................................... 19

*Lipsky v. Commonwealth United Corp.,*
    551 F.2d 887 (2d Cir. 1976) ............................................................................. 8

*Local 295/Local 851 IBT Emplr. Group Pension Trust & Welfare Fund v. Fifth Third
    Bancorp,*
    731 F. Supp. 2d 689 (S.D. Ohio 2010) ........................................................... 22

*Lormand v. U.S. Unwired, Inc.,*
    565 F.3d 228 (5th Cir. 2009) .......................................................................... 20

*Lustgraaf v. Behrens,*
    619 F.3d 867 (8th Cir. 2010) .......................................................................... 33

*McLaughlin v. Chase Home Fin. LLC,*
    519 Fed. Appx. 904 (6th Cir. 2013) ................................................................ 26

*Melder v. Morris,*
    27 F.3d 1097 (5th Cir. 1994) .......................................................................... 17

*Merck & Co. v. Reynolds,*
    559 U.S. 633 (U.S. 2010) ............................................................................... 10

*Olkey v. Hyperion 1999 Term Trust, Inc.,*
    98 F.3d 2 (2d Cir. 1996) ................................................................................. 31

*P. Stolz Family P'ship L.P. v. Daum,*
    355 F.3d 92 (2d Cir. 2004) ............................................................................... 9

*Paskowitz v. Pac. Capital Bancorp*,
　2009 U.S. Dist. LEXIS 122365 (C.D. Cal. Nov. 6, 2009) ................................ 29

*P.R. Diamonds, Inc. v. Chandler*,
　364 F.3d 671 (6th Cir. 2004) ...................................................... 21, 22, 32, 33

*Police & Fire Ret. Sys. v. Indymac MBS, Inc.*,
　721 F.3d 95 (2d Cir. 2013)......................................................................... 12

*Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*,
　485 F.3d 840 (6th Cir. 2007) .................................................................... 18

*Rowe v. Marietta Corp.*,
　955 F. Supp. 836 (W.D. Tenn. 1997)......................................................... 10

*Rubke v. Capital Bancorp Ltd.*,
　460 F. Supp. 2d 1124 (N.D. Cal. 2006) ..................................................... 18

*Ryan v. Morgan Asset Mgmt., Inc., et al.*,
　No. 2:08-cv-02162-SHM-dkv (W.D. Tenn. Dec. 15, 2009).......................... 8

*Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*,
　319 F.3d 205 (5th Cir. 2003) .................................................................... 15

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta,Inc.*,
　552 U.S. 148 (2008)................................................................................. 18

*Strougo v. Bassini*,
　282 F.3d 162 (2d Cir. 2002)..................................................................... 16

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*,
　531 F.3d 190 (2d Cir. 2008)..................................................................... 21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
　551 U.S. 308 (U.S. 2007).......................................................... 3, 20, 24, 25

*United States v. Bestfoods*,
　524 U.S. 51 (1998).................................................................................. 33

*Waterford Twp. Gen. Emples. Ret. Sys. v. SunTrust Banks, Inc.*,
　2010 U.S. Dist. LEXIS 85755 (N.D. Ga. Aug. 19, 2010) ............................ 19

*Woodward v. Raymond James Fin., Inc.*,
　732 F. Supp. 2d 425 (S.D.N.Y. 2010)....................................................... 24

**Statutes**

15 U.S.C. § 77k...................................................................................... 20

15 U.S.C. § 77l ................................................................................................ 20

15 U.S.C. § 77m ............................................................................................... 10

15 U.S.C. § 78u-4 ............................................................................................. 20

15 U.S.C. § 80a-13 ........................................................................................... 28

28 U.S.C. 1658 ................................................................................................. 10

Miss. Code Ann. § 75-71-509 .......................................................................... 11

Tenn. Code Ann. § 47-18-110 .......................................................................... 11

Tenn. Code Ann. § 48-1-122 ............................................................................ 11

**Rules**

Fed. R. Civ. P. 12 .............................................................................................. 8

Fed. R. Civ. P. 9 ........................................................................................ passim

**Regulations**

17 C.F.R. § 230.405 .......................................................................................... 33

## INDEX OF EXHIBITS AND ABBREVIATIONS

| Exhibit | Exhibit Title | Abbreviation |
|---------|---------------|--------------|
| A | RMK High Income Fund, Inc. Prospectus (June 24, 2003) | RMH Prosp. |
| B | RMK High Income Fund, Inc. Statement of Additional Information (June 24, 2003) | RMH SAI |
| C | RMK Strategic Income Fund, Inc. Prospectus (March 18, 2004) | RSF Prosp. |
| D | RMK Strategic Income Fund, Inc. Statement of Additional Information (March 18, 2004) | RSF SAI |
| E | RMK Advantage Income Fund, Inc. Prospectus (Nov. 8, 2004) | RMA Prosp. |
| F | RMK Advantage Income Fund, Inc. Statement of Additional Information (Nov. 8, 2004) | RMH SAI |
| G | RMK Multi-Sector High Income Fund, Inc. Prospectus (Jan. 19, 2006) | RHY Prosp. |
| H | RMK Multi-Sector High Income Fund, Inc. Statement of Additional Information (Jan. 19, 2006) | RHY SAI |
| I | Annual Report for RMA, RMH, and RSF Funds (March 31, 2005) | 2005 Ann. Rpt. |
| J | Annual Report for RMA, RMH,RHY, and RSF Funds (March 31, 2006) | 2006 Ann. Rpt. |
| K | Semi-Annual Report for RMA, RMH, RHY, and RSF Funds (Sept. 30, 2006) | 2006 Semi-Ann. Rpt. |
| L | Annual Report for RMA, RMH, RHY, and RSF Funds (March 31, 2007) | 2007 Ann. Rpt. |
| M | Appendix of Relevant Disclosures | Appx. of Disclosures |
| N | Kelsoe's Letter to Shareholders (Nov. 7, 2007) | Kelsoe Ltr. |

Defendants Morgan Keegan & Company, Inc. ("Morgan Keegan"), Regions Financial Corporation ("Regions"), MK Holding, Inc. ("MK Holding"), Morgan Asset Management, Inc. ("MAM"), James C. Kelsoe, Jr. ("Kelsoe"), Brian B. Sullivan ("Sullivan"), Joseph Thompson Weller ("Weller"), Allen B. Morgan ("Morgan"), and J. Kenneth Alderman ("Alderman") (collectively "Defendants") respectfully submit this memorandum in support of their Motion to Dismiss Plaintiff's Complaint.

## PRELIMINARY STATEMENT

Plaintiff has filed a 196-page Complaint outlining alleged misrepresentations and omissions that form the basis of his claims, including allegations that the share prices of the funds at issue plummeted when investors began to the learn the truth that "Kelsoe's funds were not like other high yield bond funds – they were a 'big exception' and 'worst in [their] class.'" The glaring problem with his assertions is that Plaintiff did not invest in any of the funds at issue until **after** his own Complaint alleges these disclosures were made. In essence, Plaintiff seeks to hold Defendants liable for alleged misrepresentations and omissions that Plaintiff's own Complaint alleges were known at the time he began investing in the funds. What is more, Plaintiff began investing in the funds at a time when they were down some 40% from their IPO prices – and yielding in excess of 17% - and Plaintiff continued to invest in the funds until they had fallen nearly 85%.

Plaintiff seeks to recover losses stemming from investments in four closed-end investment funds – the RMK High Income Fund, Inc. ("High Income Fund" or "RMH"), the RMK Strategic Income Fund, Inc. ("Strategic Fund" or "RSF"), the RMK Advantage Fund, Inc. ("Advantage Fund" or "RMA"), and the RMK Multi-Sector High Income Fund, Inc. ("Multi-

Sector Fund" or "RHY") (collectively the "Funds"). Plaintiff asserts eight claims[1] – each of which fails as a matter of law.

There are at least seven grounds to dismiss Plaintiff's claims, in whole or in part.

- First, Plaintiff's claims are time-barred by the applicable statutes of repose because Plaintiff failed to timely assert his claims and no basis exists to toll the repose periods.

- Second, Plaintiff lacks standing to assert a claim under Section 12(a)(2) of the 1933 Act because Plaintiff did not purchase the Multi-Sector Fund on the IPO.

- Third, Plaintiff's fraud claims fail as a matter of law because Plaintiff's Complaint alleges the information claimed to be misrepresented and/or withheld was disclosed and known at the time Plaintiff began investing in the Funds.

- Fourth, Plaintiff's claims are textbook derivative claims and are due to be dismissed because they are premised on mismanagement of the Funds and they allege injuries to the Funds themselves, rather than to Plaintiff personally.

- Fifth, Plaintiff fails to adequately plead actionable conduct by Defendants and also fails to meet the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA") and Rule 9(b) of the Federal Rules of Civil Procedure.

- Sixth, Plaintiff fails to allege any actionable material misstatements or omissions to support his claims as the Funds' Offering Documents[2] and other public filings plainly refute Plaintiff's allegations that the Funds and Defendants omitted or misrepresented material information regarding the Funds.

- Finally, Plaintiff's claims premised on control person liability under Section 15 of the 1933 Act and Section 20(a) of the 1934 Act fail as a matter of law as Plaintiff has failed to establish a primary violation of the securities laws by *any* Defendant and offers only conclusory allegations to support his claims for control person liability.

---

[1] Counts I-III are for claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 ("1933 Act"), regarding purported misrepresentations and omissions contained in the Multi-Sector Fund's Offering Documents. Counts IV and V purport to allege claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("1934 Act"), relating to the annual, semiannual, and quarterly reports filed by all four Funds. Counts VI-VIII assert claims under the Tennessee Consumer Protection Act, Tennessee Securities Act, and Mississippi Securities Act, respectively.

[2] "Offering Documents" refers to the Funds' Registration Statements, including, without limitation, Prospectuses, Statements of Additional Information, and any information incorporated by reference therein.

## STATEMENT OF FACTS

I.   **THE FUNDS AND PLAINTIFF'S ALLEGATIONS**

The Funds had their initial public offerings on June 24, 2003 (RMH); March 18, 2004 (RSF); November 8, 2004 (RMA); and January 19, 2006 (RHY). (Exs. A, C, E, G (RMH, RSF, RMA, & RHY Prosp., Cover Pages).)[3] The Funds' Offering Documents set forth their investment strategy, which was to invest "the majority of [their] total assets in below investment grade debt securities," which are "commonly referred to as 'junk bonds.'" (*See* Exs. A (RMH Prosp., Cover Page); C (RSF Prosp., Cover Page); E (RMA Prosp., Cover Page); G (RHY Prosp., Cover Page).)[4] Specific types of debt securities in which the Funds could invest included, among others, ABS and MBS. (*See*, *e.g.*, Exs. A (RMH Prosp., pp. 15-20); B (RMH SAI, pp. 2-26); D (RSF SAI, pp. 2-27); F (RMA SAI, pp. 3-28); H (RHY SAI, pp. 2-37).) Each Fund warned investors of the risks associated with any investment in it, including the risks associated with securities in which the Funds would invest. Specifically, each Fund disclosed, *on the cover page* of its prospectus, that "**[t]he Fund's strategy of investing the majority of its total assets in below investment grade debt securities and its expected use of leverage involve a high degree of risk. Stockholders could lose some or all of their investment.**" (Ex. E (RMA Prosp.,

---

[3] The Complaint alleges correct IPO dates with respect the High Income and Strategic Funds but is slightly off with respect to the Advantage and Multi-Sector Funds. (Compl., ¶¶ 5-8.)

[4] When deciding a motion to dismiss, "courts must consider the complaint in its entirety, as well as other . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Such documents include "the full text of securities filings, the company prospectus, analysts' reports, and statements integral to a complaint," as well as documents that are "referred to in the complaint and are central to the plaintiff's claim." *In re Bridgestone Sec. Litig.*, 430 F. Supp. 2d 728, 732 (M.D. Tenn. 2006). Courts may also take notice of market trends and relevant media reports. *See D.E. & J. Ltd. P'ship v. Conaway*, 284 F. Supp. 2d 719, 749 n.26 (E.D. Mich. 2003), *aff'd* 133 F. App'x 994 (6th Cir. 2005).

Cover Page); *see also* Exs. A, C, G (RMH, RSF, & RHY Prosp., Cover Pages) (same).)[5] Each Fund's Prospectus then reemphasized that: "Because the Fund expects to invest a majority of its assets in below investment grade debt securities, *investment in the Fund's common shares involves a high degree of risk. . . . Due to uncertainty in all investments, there can be no assurance that the Fund will achieve its investment objectives.*" (Ex. G (RHY Prosp., p. 6) (emphasis supplied); *see also* Exs. A (RMH Prosp., p. 5); E (RMA Prosp., p. 5); C (RSF Prosp., pp. 5-6).)

In mid-2007, the well-documented financial crisis caused the market for debt securities, such as the ABS and MBS in which the Funds invested, to disappear. The downturn caused sharp and immediate reductions in the prices at which such securities could be sold, resulting in a drop in each Fund's NAV, and a sharp decline in the Funds' share prices. The Funds' decline was commensurate with the drop in values of many other global asset classes. And the credit crisis was an event that was unforeseen by virtually everyone. Notably, Plaintiff did not invest in the Funds until late 2007 – after the global credit crisis started and manifested itself in dramatically declining share prices for the funds at issue.

Despite purchasing his shares in the midst of a highly publicized and unprecedented collapse of certain credit markets and extensive disclosures emphasizing the risk associated with an investment in the Funds, Plaintiff claims that he was defrauded. Plaintiff alleges that Defendants: (i) concealed risks inherent in the Funds that were in fact disclosed – on the cover pages of the Funds' prospectuses, no less (Compl., ¶ 12); (ii) over-concentrated the Funds' assets

---

[5] The Funds also disclosed that "[u]nder adverse market or economic conditions, the secondary market for below investment grade securities could contract . . . and these instruments may become illiquid. . . . Factors having an adverse impact on the market value of below investment grade securities may have an adverse effect on the Fund's net asset value and the market value of its common shares." (*See, e.g.*, Ex. A (RMH Prosp., p. 25).)

in ABS and MBS, thereby violating the Funds' investment guideline prohibiting concentration in a single "industry" (Compl., ¶¶ 13-14); (iii) misclassified certain assets, thereby understating the Funds' holdings of ABS and MBS (*id.* at ¶¶ 15-16); (iv) selected an inappropriate benchmark index against which to compare the Funds' returns (*id.* at ¶¶ 24-26); and (v) failed to exercise adequate due diligence prior to purchasing securities for the Funds (*id.* at ¶¶ 22-23).

## II.    THE DEFENDANTS

During the period in question, MAM was the investment adviser the Funds used to select and manage the Funds' investments, subject to the supervision of the Funds' respective Boards (*see, e.g.*, Ex. E (RMA Prosp., p. 31), pursuant to an Investment Advisory Agreement. (Compl., p. i n.1, ¶¶ 5, 51.) MAM employee James Kelsoe served as the Funds' portfolio manager. (*Id.* at ¶ 5.) MAM is a wholly owned subsidiary of MK Holding. (*Id.* at ¶ 1.) MK Holding, MAM, and Morgan Keegan & Company, Inc. are subsidiaries of Regions, a publicly held bank holding company. (*Id.* at ¶¶ 48-51.) Other Defendants include certain officers and directors of the various corporate entities named in this action, including officers and directors of the Funds, MAM and/or Regions. The RMK Funds are each Maryland corporations. (*See, e.g.*, Ex. C (RSF Prosp., p. 14).)

MAM served as the Funds' investment advisor until July 29, 2008, when the management of the Funds was transferred to Hyperion Brookfield Asset Management, Inc. ("Hyperion), an entity with absolutely no relationship legal or otherwise to any Defendant. (Compl., p. 1, n.1.)

## III.    THE PLAINTIFF

Plaintiff was, at times noted herein, a shareholder of the Funds. (Compl., at Ex. X.). Plaintiff, through an account with E*Trade Financial, made his initial investments in the Funds

on October 2, 2007, when he purchased 2,500 shares of the Strategic Fund at $8.65 per share. (*Id.*). At the time of his initial investment, the Strategic Fund was down some 40% from its IPO price of $15. (*See* Compl., ¶ 6.) Despite persistent declines in the share price, Plaintiff continued to purchase shares of the Strategic Fund throughout 2007. (*See* Compl., at Ex. X.) These purchases were after Mr. Kelsoe's letter to the Funds' shareholders telling them "**[t]here are no optimistic projections at this time!**" (Compl., ¶ 385; Ex. N (Kelsoe Ltr.) (emphasis added).)

On December 5, 2007, Plaintiff alleges the Funds "disclosed massive losses in [their] ABS investments and a significant drop in [their] NAVs." (Compl., ¶ 387.) Despite this, Plaintiff continued to buy thousands of shares of the Funds. (*See* Compl., at Ex. X (showing that on December 14, 2007, Plaintiff bought 35,000 shares of the Strategic Fund at $4.83 to $4.78 per share).) At this same time, Plaintiff also began investing in the Multi-Sector and Advantage Funds, at a time when they were both down more than 65% from their $15 IPO price. (*Id.*) As prices steadily declined into 2008, Plaintiff continued to increase his investments in the Funds despite losses in the Funds' share prices of more than 70%. (*Id.* (For example, on February 5, 2008, Plaintiff purchased 5,000 shares of the Strategic Fund at $4.00 per share, 15,000 shares of the Advantage Fund for $4.30 or less per share, and 5,000 shares of the Multi-Sector Fund at $4.49 per share.).)

While Plaintiff alleges that "news continued to trickle out to investors . . . revealing the extent of the consequences of the Defendants' fraudulent scheme" (Compl., ¶ 396), Plaintiff continued to add to his investments including an initial investment in the High Income Fund on February 20, 2008 of 10,000 shares at approximately $4.00 per share – a price down almost 75% from its IPO. (*Id.*) Thereafter until June 2008, Plaintiff continued to invest in the Funds as their share prices continuously fell. (*Id.*). During this time, Plaintiff's own Complaint admits he was

aware of facts giving rise to his claims as various class actions were being filed against the Funds and others. (*See* Compl., ¶¶ 430 (disclosing the filing of *Willis* on December 21, 2007 related to 1933 Act claims); 431-32 (disclosing the filing of *DeJoseph* and *Daniels* on April 4, 2008 related to 1934 Act, Rule 10(b)(5), and state securities claims).) Thus, at a time when class action complaints were being filed making the exact same claims as Plaintiff is making, Plaintiff continued to invest in the Funds. (*See* Compl., at Ex. X (revealing Plaintiff's purchase of 40,000 additional shares in May 2008).) Thereafter, on June 12, 2008 Plaintiff made his final alleged investments in the Funds, purchasing 5,000 shares of the Multi-Sector Fund at $2.32 per share – a loss of 85% from the Fund's $15 IPO price. (*Id.*)

## MOTION TO DISMISS STANDARD

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the well-pleaded factual allegations in a complaint must be construed in favor of the plaintiffs, the court need not accept as true legal conclusions or unwarranted factual inferences. *See id.* at 1949. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1950. A complaint has "facial plausibility" when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949. The inference of a "mere possibility of misconduct" is insufficient. *Id.* at 1950; *see also Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009). The complaint must include more than "labels and conclusions," and must plead facts sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

Moreover, Plaintiff may not satisfy his pleading burden by repeating mere allegations made in other proceedings.[6] Allegations in regulatory proceedings are nothing more than allegations; they are not facts, have not been tested by any court, are immaterial, and cannot, as a matter of law, salvage an otherwise deficient Complaint. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003); *see also Ryan v. Morgan Asset Mgmt., Inc., et al.*, No. 2:08-cv-02162-SHM-dkv (W.D. Tenn. Dec. 15, 2009), Order at 2 (Docket Entry No. 58) ("This Court has no duty to examine a separate complaint filed [in another case] and determine exactly what additional claims for relief Plaintiff intends to plead in this case." (quotation marks and citation omitted)); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) (holding that references to a complaint filed by the SEC was improper, and that "neither a complaint nor references to a complaint which results in a consent judgment may properly be cited in the pleadings under the facts of this case").[7] Plaintiff's Complaint must rise and fall on its own merit, irrespective of generalized allegations made in other proceedings.

---

[6] *See, e.g.*, Compl., ¶¶ 244-258 (repeating and adopting allegations in the Multi-State Task Force Joint Notice to Revoke Registration and Impose Administrative Penalty); *id.* at ¶ 262 (repeating allegations in the SEC Consent Order); *id.* at ¶ 20 (repeating SEC's allegations regarding valuation); *id.* at ¶¶ 112, 135, 137, 139-141, 148, (prefacing allegations with "[a]ccording to the SEC" or "as alleged by the SEC"); *id.* at ¶¶ 151-163 (relying on SEC report in section entitled "SEC Report Documents Fraud Committed by Defendants in Fund NAV's"); *id.* at ¶¶ 231-232 (repeating allegations contained in the SEC's Cease and Desist Order); *id.* at ¶¶ 263-277 (same); *id.* at ¶ 234 (repeating allegation of the Multi-State Task Force); *id.* at ¶ 278-279 (repeating allegations of the FINRA Complaint); *id.* at ¶¶ 280-282 (repeating allegations of the SEC Enforcement Action).

[7] To the extent the Court does not grant the instant motion to dismiss, the Court should strike Plaintiff's improper references to unproven allegations of regulators. Fed. R. Civ. P. 12(f); *see also In re Connetics Corp. Sec. Litig.*, 542 F. Supp. 2d 996, 1005 (N.D. Cal. 2008) (striking portions of plaintiff's paragraph relying on SEC complaint as factual support for plaintiff's allegations).

## ARGUMENT

I.   **PLAINTIFF'S CLAIMS ARE TIME-BARRED BY THE APPLICABLE STATUTES OF REPOSE**

    A.   **The Applicable Statutes of Repose Bar Plaintiff's Claims.**

Plaintiff asserts a number of causes of action in this case, each of which has an applicable statute of repose that must be enforced. Statutes of repose "impose 'an absolute time limit within which actions must be brought.'" *In re Estate of Davis*, 308 S.W.3d 832, 838 (Tenn. 2010) (quoting *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005)). "Unlike the time for filing under a statute of limitations, which begins when a claim accrues, the period for a statute of repose begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." *Id.* (quotations omitted).[8] "Essentially, a statute of repose terminates liability by limiting the time during which a cause of action may accrue." *Harvey v. Allstate Ins. Co.*, No. 03-2721-M1V, 2004 U.S. Dist. LEXIS 27213, at *12 (W.D. Tenn. Aug. 23, 2004).

    1.   <u>Sections 11, 12(a)(2), and 15 of the 1933 Act are governed by a three year statute of repose that bars Plaintiff's claims.</u>

Pursuant to the Securities Act of 1933, no action can "be brought to enforce a liability created under section 11 . . . more than three years after the security was bona fide offered to the

---

[8] While statutes of repose and statutes of limitations are frequently bundled, they are distinct from each other and serve different functions. As one court explained:

> Statutes of limitations limit the availability of remedies and, accordingly, may be subject to equitable considerations, such as tolling, or a discovery rule. In contrast, statutes of repose affect the underlying right, not just the remedy, and thus they "run without interruption once the necessary triggering event has occurred, even if equitable considerations would warrant tolling or even if the plaintiff has not yet, or could not yet have, discovered that she has a cause of action."

*Fed. Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 140 (2d Cir. 2013) (quoting *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 102-103 (2d Cir. 2004)).

public, or under section 12(a)(2) more than three years after the sale." 15 U.S.C. § 77m. As Section 15 relates directly to Sections 11 and 12, it is also controlled by a three-year statute of repose. *See Rowe v. Marietta Corp.*, 955 F. Supp. 836, 839 (W.D. Tenn. 1997).

It is undisputed that the Multi-Sector Fund – which is the only Fund at issue under Plaintiff's 1933 Act claims – was "bona fide offered to the public" in January 2006. (*See* Compl., ¶ 8). Thus, the three-year statute of repose on Plaintiff's Section 11 claim began to run in January 2006. Plaintiff's Section 12(a)(2) claim began to run when the Multi-Sector Fund was sold to Plaintiff, which was in December 2007. (*Id.* at Ex. X.) Thus, the three-year statute of repose for Plaintiff's 1933 Securities Act claims expired in January 2009 and December 2010 respectively – well before the filing of Plaintiff's Complaint on August 22, 2013.[9] As a result, Plaintiff's claims are time-barred.

  2. <u>Sections 10(b) and 20(a) of the 1934 Act and SEC Rule 10b-5 are governed by a five-year statute of repose that bars Plaintiff's claims.</u>

A private securities fraud complaint under Sections 10(b), 20(a), and Rule 10b-5 "may be brought not later than . . . 5 years after such violation." 28 U.S.C. § 1658(b); *see also Merck & Co. v. Reynolds*, 559 U.S. 633 (U.S. 2010). Plaintiff's allegations make clear that all of the alleged violations took place well before July 29, 2008 when Hyperion – an entity with absolutely no relationship, legal or otherwise, to Defendants – took over management of the Funds, after which point in time Defendants could not have committed any violation of the 1934 Act. (Compl., p. 1 n.1.) Therefore, the five-year statute of repose at a minimum bars any claims filed after July 29, 2013. Accordingly, Plaintiff's 1934 Act claims – for each of the Funds at issue – are time-barred as his Complaint was not filed until August 22, 2013

---

[9] Even if you considered Plaintiff's final purchase of the Multi-Sector Fund, which was on June 12, 2008, the statute of repose ran as of June 2011.

     3.     <u>The five-year statutes of repose bars Plaintiff's claims under the Tennessee and Mississippi Securities Acts.</u>

Pursuant to the Tennessee Securities Act, "[n]o action shall be maintained under this section unless commenced before the expiration of five (5) years after the act or transaction constituting the violation." Tenn. Code Ann. § 48-1-122(h). Under the Mississippi Securities Act, "[a] person may not obtain relief . . . unless the action is instituted within . . . five (5) years after the violation." Miss. Code Ann. § 75-71-509(j)(2). Like Plaintiff's 1934 Act claims discussed above, Plaintiff's state securities claims are time-barred as the alleged violations giving rise to Plaintiff's claim occurred more than five years prior to the filing of the Complaint.

     4.     <u>Plaintiff's Tennessee Consumer Protection Act claim is barred by the five-year statute of repose.</u>

The Tennessee Consumer Protection Act ("TCPA") provides that "in no event shall an action under § 47-18-109 be brought more than five (5) years after the date of the consumer transaction giving rise to the claim for relief." Tenn. Code Ann. § 47-18-110. Plaintiff's claim arises from his purchase of the Funds, the last of which according to Plaintiff's Complaint was on June 12, 2008. (Compl. at Ex. X.) Therefore, the statute of repose ran on Plaintiff's TCPA claim on June 12, 2013. As Plaintiff's Complaint was not filed until August 22, 2013, Plaintiff's TCPA claim is barred by the five-year statute of repose.

**B.     Tolling Does Not Save Plaintiff's Claims.**

Plaintiff relies on *American Pipe* to toll the running of the statutes of limitations on his claims. In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974) (footnote omitted). *American Pipe*, however, does

not save Plaintiff's claims because *American Pipe* does not toll the running of the statutes of repose.

In *IndyMac*, the Second Circuit held that *American Pipe* tolling does not apply to statutes of repose because (a) if *American Pipe* tolling is a form of equitable tolling, it is prohibited under the Supreme Court's decision in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991) (equitable "tolling principles do not apply to that period"), and (b) if *American Pipe* tolling is a form of legal tolling, its application to the statute of repose is prohibited under the Rules Enabling Act. *Police & Fire Ret. Sys. v. Indymac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013); *see also Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 624-25 (S.D.N.Y. 2011) (holding that *American Pipe*'s equitable tolling doctrine does not toll the Security Act's three-year statute of repose and dismissing plaintiffs' Section 11 and 12 claims as time-barred).[10]

Plaintiff's claims are subject to three-year and five-year statutes of repose. As outlined in detail above, the applicable statutes of repose expired well before the filing of Plaintiff's Complaint on August 22, 2013, and all of Plaintiff's claims are therefore subject to dismissal.

## II.   PLAINTIFF LACKS STANDING TO ASSERT CLAIMS UNDER SECTION 12(a)(2) OF THE 1933 ACT

In *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995), the Supreme Court held that Section 12 of the Securities Act only applies when an investor buys stock directly in an offering, not in a secondary purchase at a later date in the after-market. *See also, e.g.*, *In re Sterling Foster & Co., Inc., Securities Litigation*, 222 F. Supp. 2d 216, 244-45 (E.D.N.Y. 2002) (citing

---

[10] While this Court has previously noted that some courts have applied *American Pipe* to statutes of repose (*see In re Regions Morgan Keegan Closed-End Fund Litigation*, No. 2:07-cv-02830 (March 30, 2012) at pp. 23-24), the Second Circuit's 2013 decision in *Indymac* was published since, and – after an exhaustive analysis of federal case law – refused to apply *American Pipe* tolling principles to statutes of repose.

numerous decisions, including by the First, Second, and Tenth Circuits, upholding the proposition that "purchasers in private or secondary market offerings are precluded from bringing actions under Section 12(a)(2)").

In the present case, Plaintiff did not directly purchase shares of the Multi-Sector Fund – which is the only Fund at issue under Plaintiff's 1933 Act claims. Plaintiff attached "[a] summary of dates and amounts of Plaintiff [*sic*] purchases of the Funds" as Exhibit X to the Complaint. (Compl., ¶ 459.) Exhibit X makes clear that Plaintiff did not purchase the Multi-Sector Fund until December 2007. (Compl. at Ex. X.) The Multi-Sector Fund's initial public offering was in January 2006. (Compl., ¶ 8.) Thus, Plaintiff's purchase of the Multi-Sector Fund was well after the IPO.

As an after-market purchaser, Plaintiff does not have standing to assert Section 12 claims and Plaintiff's Count II must be dismissed as a matter of law.

## III.    PLAINTIFF'S FRAUD CLAIMS ARE DUE TO BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLEAD RELIANCE

Reliance by plaintiffs on the alleged misrepresentations and/or omissions for which they seek to hold defendants liable is an essential element under the 1934 Act and common law fraud. *Chelsea Assoc. v. Rapanos*, 527 F.2d 1266, 1271 (6th Cir. 1975); *In re Accredo Health, Inc.*, No. 03-2216, 2006 U.S. Dist. LEXIS 97621, at *19 (W.D. Tenn. Mar. 7, 2006). Here, the requisite reliance is admittedly absent. Indeed, Plaintiff alleges that "investors beg[a]n to learn the truth about the Funds, causing their shares to plummet in value" in July 2007 – more than three months before Plaintiff made his first investment in the Funds. (Compl., ¶¶ 370-371; *see also id.* at Ex. X.) Plaintiff alleges it was disclosed to the public in July 2007 that "Kelsoe's funds were not like other high yield bonds funds – they were a 'big exception' and 'worst in their class.'" (Compl., ¶ 372.) In August 2007 Plaintiff alleges investors learned that "[a]n independent

valuation consultant [was] retained to assist in determining the fair value of certain portfolio securities of the Funds" and that the previous internal accounting and valuations processes were inadequate. (Compl., ¶¶ 374-375.) That same month Plaintiff alleges investors learned that the Funds had been "victimized by . . . subprime mortgages" and that "[f]unds with debt-backed securities such as collateralized mortgage obligations have had trouble finding buyers for assets they want to sell, and have even had difficulty determining the value of their holdings." (Compl., ¶¶ 376-377.) Plaintiff's own Complaint alleges this information was known and available when he began investing in the Funds in October 2007.

Moreover, Plaintiff alleges he "relied on the Funds' prices as an accurate reflection of their value, and Defendants' misrepresentations materially affected the Funds' prices." (Compl., ¶ 422.) Plaintiff, however, did not own any of the Funds until October 2007 when he purchased the Strategic Fund at $8.65, which was down 42% from its IPO price of $15.00. (*See id.* at Ex. X; *see also id.* at ¶ 6.)[11] Despite the Funds' continuing and dramatic declines, Plaintiff continued to purchase shares of the Funds through June 2008 when Plaintiff made his last purchase of the Multi-Sector Fund at $2.32, down 85% from its IPO price of $15.00. (*Id.* at Ex. X; *see also id.* at ¶ 8.) Plaintiff admits he knew or was able to discover the facts giving rise to his claims, including his 1933 Act, 1934 Act, and state securities law claims, no later than April 4, 2008. (Compl., ¶¶ 430-432.) Despite being on notice that the Funds' public disclosures contained alleged misrepresentations and omissions, Plaintiff nevertheless continued to purchase shares of the Funds until June 2008. (Compl., at Ex. X.) Not only does this fact defeat as a matter of law any claims based on purchases made within the April-June 2008 timeframe, but it calls into

---

[11] Plaintiff's allegations as to pricing are likewise nonsensical because Plaintiff relies on regurgitated allegations of the SEC that make clear the alleged violations occurred between January and July 2007, when Plaintiff didn't even own the Funds. (*See, e.g.*, Compl., ¶¶ 20, 136.)

question Plaintiff's good-faith basis for making any of the allegations set forth in his complaint. *See, e.g.*, *In re Reciprocal of Am. (ROA) Sales Practices Litig.*, No. 04-2294, 2006 U.S. Dist. LEXIS 71808, at *35 (W.D. Tenn. Sept. 29, 2006) ("Knowledge of the truth defeats a claim of fraud because it eliminates the deceit as the "but for" cause of the damages." (quoting *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 218-19 (5th Cir. 2003))).[12]

## IV.    PLAINTIFF'S CLAIMS ARE DERIVATIVE, BELONG TO THE FUND COMPANIES, AND CANNOT BE BROUGHT ON AN INDIVIDUAL BASIS

In reading the entirety of the Complaint and focusing on the core of Plaintiff's alleged wrongs, he consistently argues the Funds were mismanaged.[13] Disputes over the management of the RMK Funds, however, constitute alleged breaches of duties owed to the Funds – not to shareholders such as Plaintiff. Redress of such alleged breaches can be pursued only by the Funds or by shareholders on behalf of the Funds in a properly asserted derivative action. *See, e.g.*, *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 561 (Tenn. 1990) ("Mismanagement which depresses the value of stock is a wrong to the corporation; *i.e.*, the stockholders collectively, to be enforced by a derivative action." (quoting *Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del. 1970))); *In re Goldman Sachs Mut. Funds Fee Litig.*, No. 04 civ 2567, 2006 U.S. Dist. LEXIS 1542, at *20 (S.D.N.Y. Jan. 17, 2006) (claims "essentially alleg[ing] that defendants failed to

---

[12] Plaintiff's claim under the Mississippi Securities Act likewise fails for failure to plead any allegations that would give rise to a claim under Mississippi law. Indeed, the Funds are Maryland corporations while the Defendants are all incorporated and/or reside in either Delaware, Tennessee, or Alabama. (Compl., ¶¶ 44-58.) Plaintiff alleges he is a U.S. citizen presently residing overseas. (*Id.* at ¶ 43.) Thus, Plaintiff has failed to plead any facts that would give rise to a claim under the Mississippi Securities Act as no party is a resident of Mississippi and none of the actions giving rise to the claim took place in Mississippi.

[13] See, e.g., Compl., ¶¶ 4 ("The Funds concentrated between 65-70% of their portfolio securities in . . . ABS."), 4 ("The Funds fraudulently overstated the values of portfolio securities, manipulated price quotations . . ., and subsequently reported false Net Asset Values."), 186 ("A significant number of the structured products held by the Funds were subordinated tranches of various securitizations."), 401 ("[T]he collapse of the Funds was a result of the large positions of concealed mortgage-backed securities products in the Funds . . . .").

disclose information to investors and mismanaged the Funds ... [were] claims of mismanagement of assets by defendants which fail to allege any injury independent of the alleged injury to the Funds").

"To bring a direct suit, the stockholder's claimed direct injury must be independent of any alleged injury to the corporation." *Jolly Roger Fund LP v. Sizeler Prop. Investors, Inc.*, No. 05-841, 2005 U.S. Dist. LEXIS 26837, at * 14 (D. Md. Nov. 3, 2005) (quotations omitted).[14] Far from alleging any independent harm, Plaintiff's allegations make clear that his injuries are inseparable from purported harm to the funds themselves:

> [W]hen the true facts were subsequently disclosed, the prices of the Funds' publicly traded securities declined precipitously and Plaintiff was harmed and damaged as a direct and proximate result of their [*sic*] purchases of the Funds' securities at artificially inflated prices and the subsequent decline in the prices of those securities when the truth began to be disclosed.

(Compl., ¶ 501.) Maryland law is clear that shareholders have no direct private cause of action for the diminution in the value of their individual shares due to mismanagement of the corporation.[15] Any "claim that the assets of a mutual fund have been depleted through mismanagement or other wrongdoing is one that should be brought derivatively." *In re Am.*

---

[14] The Funds are Maryland corporations and thus subject to Maryland law. *See Casden v. Burns*, 306 F. App'x 966, 974 (6th Cir. 2009) (holding that determination as to whether a plaintiff's claims are direct or derivative is governed by the law of the state of incorporation).

[15] *See, e.g., Strougo v. Bassini*, 282 F.3d 162, 174-75 (2d Cir. 2002) (collecting Maryland case law and holding that plaintiff could not pursue direct claims for corporate mismanagement and waste); *Cowin v. Bresler*, 741 F.2d 410, 414 (D.C. Cir. 1984) ("[c]laims of corporate mismanagement must be brought on a derivative basis"); *see also Argiropoulos v. Kopp*, No. CCB-06-0769, 2007 U.S. Dist. LEXIS 22351, at *19 (D. Md. Mar. 26, 2007) (concluding that such allegations are "classic descriptions of waste and mismanagement of the corporation, and . . . appropriately brought under a derivative action").

*Funds Fees Litigs.*, No. CV 04-5593-GAF, 2005 U.S. Dist. LEXIS 41884, at *18-19 (C.D. Cal. Dec. 16, 2005).[16]

In short, Plaintiff has alleged that the "direct" cause of the decline in the Funds' share prices – and, therefore, the decline in value of the Funds' holdings – was the mismanagement of the Funds' portfolio. Thus, any harm suffered by Plaintiff is indistinguishable from any harm suffered by all other investors in the Funds. Because Plaintiff did not bring such claims in a derivative capacity, this Court should dismiss all of Plaintiff's claims, which challenge the management of the RMK Funds.[17]

## V.   PLAINTIFF CANNOT SATISFY THE PLEADING REQUIREMENTS FOR HIS FRAUD CLAIMS

Plaintiff's claims are due to be dismissed for failure to meet the heightened pleading requirements of the PSLRA and Federal Rule of Civil Procedure 9(b).[18]

---

[16] Plaintiff's mismanagement claims are indistinguishable from claims that courts routinely have held are of a derivative and not direct nature.[16] Indeed, in 2010, the Alabama Supreme Court issued an opinion that addressed materially identical claims against MAM, Regions, and Mr. Kelsoe relating to the very same funds at issue in this case finding that the claims were derivative and could not be brought by shareholders outside of a shareholder derivative action. *See Ex parte Regions Financial Corp.*, 67 So. 3d 45 (Ala. 2010). The Alabama Supreme Court expressly held that the key inquiry for distinguishing direct from derivative claims is "**whether the shareholders have suffered an injury that is distinct from the injury suffered by the RMK funds, or whether the injury to the shareholders merely derives from that injury.**" *Id.* at 51. The Alabama Supreme Court reaffirmed this opinion in *Ex Parte Morgan Asset Management, Inc.*, 86 So. 3d 309 (Ala. 2011) – a similar action against Regions, MAM, and Morgan Keegan.

[17] Any such claims were dealt with within the confines of the shareholder derivative action filed against Defendants relating to the alleged mismanagement of the closed-end Funds. *See In re Regions Morgan Keegan Closed-End Fund Litigation*, Case No. 2:07-cv-02830-SHM-dvk, in the United States District Court for the Western District of Tennessee.

[18] Because Plaintiff's claims under the Mississippi and Tennessee Securities Act and the Exchange Act of 1934 are premised on fraud, Plaintiff must satisfy the requirements of the PSLRA and Rule 9(b). While fraud is not an element of any claims under the 1933 Act, Plaintiff must also meet the heightened pleading requirements with respect to these claims because he has chosen to premise his claims on allegations of fraudulent conduct. *See In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d 744, 754 (W.D. Tenn. 2010) (citing *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 948 (6th Cir. 2009)); *see also, e.g., Melder v. Morris,*

A.     **The PSLRA Imposes Heightened Pleading Requirements Which Plaintiff Fails to Meet.**

The PSLRA imposes heightened pleading requirements for Federal securities fraud claims. Specifically, Plaintiff's claims arising under the Federal securities laws are subject to a heightened standard for pleading scienter, as well as a loss causation requirement. *See Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 165 (2008); *see also Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 847 (6th Cir. 2007).

1.     Plaintiff's allegations fail to show loss causation as required by the PSLRA.

Loss causation requires a direct, causal connection between the alleged misrepresentation and the plaintiffs' loss. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). As outlined in detail herein, Plaintiff did not purchase the Funds until after the time when the Complaint alleges investors learned of the alleged misrepresentations and/or omissions. (*See supra* Part III.) As such, Plaintiff has failed to plead and is unable to plead facts establishing loss causation as required by the PSLRA.

Moreover, Plaintiff fails to allege any facts demonstrating that the Funds' stock price declined due to the revelation of fraudulent conduct concerning the Funds. While Plaintiff cites a litany of purported "corrective disclosures," even the "corrective disclosures" cited by Plaintiffs expressly attribute the Funds' losses not to fraud, but to "a breakdown in the market for hard-to-value debt-backed securities," and observed that the Funds declined as "financial institutions worldwide faced credit concerns." (Compl., ¶ 355.) Corrective disclosures must reveal to the

---

27 F.3d 1097, 1100 n.6 (5th Cir. 1994) (holding that a "complaint's wholesale adoption of [fraud] allegations" under non-fraud claims for relief subjects a complaint to the requirements of Rule 9(b)); *Rubke v. Capital Bancorp Ltd.*, 460 F. Supp. 2d 1124, 1135-36 (N.D. Cal. 2006) (same) (quotation omitted), *aff'd* 551 F.3d 1156 (9th Cir. 2009). For this reason, Plaintiff must satisfy Rule 9(b) and the PSLRA's requirements with respect to his 1933 Securities Act claims as well.

market the specific prior misrepresentations or omissions that form the basis for the plaintiff's claims of fraud. *See In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) ("[L]oss causation is not adequately pled unless a plaintiff alleges that the market learned of and reacted to the practices the plaintiff contends are fraudulent, as opposed to merely reports of the defendant's poor financial health generally.").[19] Without exception, these "disclosures" do nothing more than assert that certain RMK mutual funds lost value during the financial crisis.

Indeed, as other courts have observed in the wake of that crisis, it is far more plausible that Plaintiff's losses resulted from the "overnight" evaporation of the market for ABS and MBS, than Defendants' fraud. *See, e.g.*, *Waterford Twp. Gen. Emples. Ret. Sys. v. SunTrust Banks, Inc.*, No. 1:09-cv-617, 2010 U.S. Dist. LEXIS 85755, at *14-15 (N.D. Ga. Aug. 19, 2010) (Plaintiffs failed to plead loss causation where "[t]he eleven percent drop occurred during a financial crisis that hit the financial services industry particularly hard."); *In re First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 165 (D. Mass. 2009) ("'[W]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by fraud decreases.'" (citation omitted)); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174 (2d Cir. 2005) (holding that "a plaintiff's claim fails when 'it has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events'" (citation omitted)).

---

[19] The bare assertion that a drop in the price of a security followed a public announcement of poor financial results is insufficient as a matter of law to establish loss causation under controlling case-law. *See Dura Pharm.*, 544 U.S. at 342-43;  *D.E. & J. Ltd. P'ship v. Conaway*, 133 F. App'x 994, 1000-01 (6th Cir. 2005). A plaintiff, therefore, must "prove that its loss resulted directly *because* of the correction to a prior misleading statement; otherwise there would be no inference raised that the original, allegedly false statement caused an inflation in the price to begin with." *Archdiocese of Milwaukee Supporting Fund, Inc. v. Halliburton*, 597 F.3d 330, 336 (5th Cir. 2010).

The "corrective disclosures" identified by Plaintiff are insufficient to show loss causation with respect to Plaintiff's 1933 and 1934 Act claims. The failure to plead loss causation requires dismissal of these claims as a matter of law.[20]

        2.    <u>Plaintiff's claims under the 1933 and 1934 Act fail to meet the heightened pleading requirements for scienter under the PSLRA.</u>

The PSLRA requires that "the complaint shall, with respect to each act or omission . . . state with particularity facts giving rise to [1] a *strong inference* that the defendant acted with [2] *the required state of mind*." *In re SCB Computer Tech., Inc. Sec. Litig.*, 149 F. Supp. 2d 334, 344 (W.D. Tenn. 2001) (quoting 15 U.S.C. § 78u-4(b)(2)) (emphasis added). The PSLRA mandates dismissal of the complaint if the requirements for pleading scienter are not met. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (U.S. 2007); *see also In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d 744, 754-55 (W.D. Tenn. 2010).[21]

        (a)    Required State of Mind

To establish "the required state of mind" (known as scienter), a plaintiff must plead facts showing either the "intent to deceive, manipulate, or defraud" or " recklessness" — with

---

[20] Loss causation is an affirmative element of a claim under § 10(b) of the 1934 Exchange Act or Rule 10b-5. *See* 15 U.S.C. § 78u-4(b)(4). Therefore, Plaintiff must plead facts sufficient to render his theory of loss causation plausible. *See Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 258 (5th Cir. 2009) (plaintiff must allege, "in respect to loss causation, a facially 'plausible' causal relationship between the fraudulent statements and omissions and plaintiff's economic loss"). Where, as here, Plaintiff fails to plead *any* facts supporting a viable theory of loss causation, and in fact pleads facts affirmatively defeating such a theory, 1933 Securities Act claims likewise fail. *See* 15 U.S.C. § 77k(e); § 77l(b); *see also Azzolini v. CorTS Trust II for Provident Fin. Trust I*, No. 1:03-CV-1003, 2005 U.S. Dist. LEXIS 38454, at *20 (E.D. Tenn. Dec. 14, 2005) (noting that dismissal of 1933 Act claims is required "[i]f it is apparent on the face of the complaint the decline in share value is not related to any material misstatement and/or omission").

[21] A showing of scienter is necessary for those Defendants against whom Plaintiff has asserted claims of primary violations of the Federal securities laws. Plaintiff asserts primary violations of the 1933 Act against RHY, Morgan Keegan, and the Director Defendants. Plaintiff asserts primary violations of the 1934 Act against the Funds, Morgan Keegan, and the Officer Defendants.

"recklessness" being "highly unreasonable conduct which is an extreme departure from the standards of ordinary care." *P.R. Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681-682 (6th Cir. 2004) (citations omitted). Recklessness sufficient to satisfy the PSLRA is "a mental state apart from negligence and akin to conscious disregard." *La. Sch. Emples. Ret. Sys. v. Ernst & Young, LLP*, 622 F.3d 471, 478 (6th Cir. 2010) (quoting *Hoffman v. Comshare, Inc. (In re Comshare, Inc. Sec. Litig.*), 183 F.3d 542, 550 (6th Cir. 1999)). Thus, a "plaintiff may survive a motion to dismiss only by pleading with particularity facts that give rise to a strong inference that the defendant acted with knowledge or conscious disregard of the fraud being committed." *Id.* at 478-78.

To plead scienter as to a corporation, "the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 195 (2d Cir. 2008). Plaintiff has pleaded no facts demonstrating that any individual whose intent could be imputed to Morgan Keegan acted with the requisite scienter.[22] Indeed, with respect to the Individual Defendants, Plaintiff relies almost entirely on the Individual Defendants' positions as "officers" and "directors" of the Funds or Morgan Keegan to satisfy the requirements for pleading scienter under the PSLRA. However, "scienter . . . cannot be inferred merely because of the defendants' positions in the company or the fact that they had access to the company's financial information. Instead, 'the [c]omplaint must allege specific facts and circumstances

---

[22] Plaintiff relies nearly exclusively on allegations addressing Mr. Kelsoe's purported conduct. Mr. Kelsoe, however, was not an employee of Morgan Keegan. (*See, e.g.,* Exs. G (RHY Prosp., p. 34 ("Day-to-day management of the Fund's portfolio will be the responsibility of a team led by James C. Kelsoe, Jr., CFA. The following individuals *at the Adviser* share primary responsibility for the management of the Fund.")); H (RHY SAI, pp. 48-50 (discussing how Messrs. Kelsoe and Tannehill are compensated by MAM, and how they serve as portfolio managers for other funds managed by MAM)); L (2007 Ann. Rept., pp. 4, 22, 39, 58 (Mr. Kelsoe signed Management Discussion of Fund Performance as an employee of MAM)).)

suggestive of their knowledge.'" *Local 295/Local 851 IBT Emplr. Group Pension Trust & Welfare Fund v. Fifth Third Bancorp*, 731 F. Supp. 2d 689, 726 (S.D. Ohio 2010) (quoting *P.R. Diamonds, Inc.*, 364 F.3d at 688); *see also Konkol v. Diebold, Inc.*, 590 F.3d 390, 397 (6th Cir. 2009).[23] With the exception of Mr. Kelsoe, Plaintiff does not plead *any* facts demonstrating that any Individual Defendant knowingly made false or misleading statements. Plaintiff merely alleges that "[o]wing to their positions with the Funds . . . [the Officer Defendants] knew or should have known about the failure to conduct due diligence, the inappropriate and inaccurate NAV calculations, the deficiencies in risk management, and the failure to follow pricing and risk assessment policies." (Compl., ¶ 414; *see also id.* at ¶¶ 466-471; 490-492 (allegations relating to the Director Defendants based on their role as "Directors" and their "senior executive positions").) These allegations are insufficient, as outlined above.

Plaintiff's remaining allegations pertain largely to Mr. Kelsoe but do not demonstrate intentional or conscious misbehavior, and are insufficient as a matter of law to show a strong inference of scienter. For example, merely regurgitating the SEC's allegations that Mr. Kelsoe pressured broker-dealers to increase the quoted prices of certain securities does not establish scienter. (*See* Compl., ¶¶ 151-153.) Plaintiffs fail to explain why asking a broker-dealer to increase a quote that a portfolio manager thought was incorrect would be wrongful or "fraudulent," especially where the Funds' valuation guidelines authorized the use of multiple

---

[23] Likewise, Plaintiff's allegations as to the Individual Defendants' incentives to inflate the Funds' NAVs because of their compensation structure (*see* Compl., ¶ 67) fail to support a strong inference of scienter. "When analyzing the self-interest factor, a court must differentiate between 'motives common to corporation and executives generally' and '"motives to commit fraud.'" *In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d at 758 (quoting *P.R. Diamonds,* 364 F.3d at 690). "[S]ome motives[] are insufficient as a matter of law to establish scienter, such as a desire for the company to appear successful and an executive's desire to protect his position in the company and increase his compensation." *Fifth Third Bancorp.,* 731 F. Supp. 2d at 720; *see also La Pietra v. RREEF Am., LLC,* 738 F. Supp. 2d 432, 443-45 (S.D.N.Y. 2010) (same).

sources of information to verify prices, and where another entity was responsible for verifying any proposed adjustments.[24] To survive a motion to dismiss, Plaintiff must have pleaded facts demonstrating that Mr. Kelsoe consciously disregarded duties regarding the valuation of the Funds' securities *knowing* that any resulting valuations would necessarily be fraudulent. The Complaint contains no particularized factual allegations to that effect. Merely alleging that "[h]ad the Fund Accounting Department followed stated policies and procedures, it would have discovered that the price Kelsoe provided was false" is insufficient. (Compl., ¶ 142.) At most, these generalized assertions suggest possible mismanagement on the part of the entities responsible for managing the Funds pursuant to a contractual arrangement, not fraud on the part of the Funds or the Individual Defendants. What is more, the regurgitated allegations of the SEC against Mr. Kelsoe, upon which Plaintiff relies, make clear that the alleged violations occurred between January and July 2007, long before Plaintiff's first investment in the Funds. (*See, e.g.*, Compl., ¶¶ 20, 136.) For all of these reasons, these allegations cannot form the requisite scienter necessary on the part of Mr. Kelsoe or be imputed to any of the Defendants.

---

[24] The Funds' Annual Reports disclosed that market quotes, deemed inaccurate, could be replaced, as follows:

> When a Fund believes that a market quote does not reflect a security's true value, the Fund may substitute for the market value a fair value *estimate* made according to methods approved by the Board of Directors. The values assigned to fair value investments are based on available information and do not necessarily represent amounts that might ultimately be realized, since such amounts depend on future developments inherent in long-term investments. Further, *because of the inherent uncertainty of valuation*, such *estimated values* may differ significantly from the values that would have been used had a ready market for the investments existed, and the differences could be material.

Exs. I (2005 Ann. Rep., p. 54); J (2006 Ann. Rep., p. 79); K (2007 Ann. Rep., p. 83) (emphasis supplied).

(b)      Strong Inference of Scienter

A "strong inference" of scienter, as required by PSLRA, is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (U.S. 2007). Thus, the reviewing court must consider – on the basis of the complaint as a whole, including all documents incorporated by reference, *id.* at 322-23, as well as the court's own "judicial experience and common sense," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) – whether there are "nonculpable explanations for the defendant's conduct" that are more likely than the plaintiff's explanation, *Tellabs*, 551 U.S. at 324. If so, the suit cannot proceed, because the inference of scienter is not "at least as likely as any plausible opposing inference." *Id.* at 328. Rather than showing fraud, Plaintiff's allegations suggest a much more plausible inference; namely, that the alleged statements or "omissions" at issue stem from the consequences of the global credit crisis and its impact on the Funds, rather than misconduct evidencing a strong inference of scienter.

It is certainly a much more plausible inference that the Funds' losses were the result of the impact of the global credit crisis, than fraudulent misconduct. Indeed, in cases following the financial crisis, courts – in finding no basis for inferring scienter – have recognized that "it is much more likely that [d]efendants (like many other financial institutions) underestimated the magnitude of the coming economic crisis and believed that they were taking adequate risk management and cautionary measures to account for any future downturn." *Woodward v. Raymond James Fin., Inc.*, 732 F. Supp. 2d 425, 436 (S.D.N.Y. 2010); *see also In re Societe Generale Sec. Litig.*, No. 08 Civ. 2495, 2010 U.S. Dist. LEXIS 107719, at *23 (S.D.N.Y. Sept. 29, 2010) (same); *In re MRU Holdings Sec. Litig.*, 769 F. Supp. 2d 500, 517 (S.D.N.Y. 2011)

("The Complaint may be said to 'give rise to an opposing and compelling inference that [d]efendants only engaged in bad (in hindsight) business judgments in connection with ARS, and did not engage in the alleged conduct with an intent to deceive investors.'" (quoting *In re Citigroup ARS Litig.*, 700 F. Supp. 2d 294, 305 (S.D.N.Y. 2009))). Based on the foregoing, this suit cannot proceed because the inference of scienter is not "at least as likely as any plausible opposing inference" – which, here, is the market downturn. *Tellabs*, 551 U.S. at 328.

### B.    Plaintiff has Failed to Plead his Claims with Particularity as Required by Rule 9(b).

Not only has Plaintiff failed to meet the heightened pleading requirements of the PSLRA, Plaintiff has similarly failed to meet the heightened pleading requirements of Rule 9(b). Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Giving definition to this rule, the Sixth Circuit has said that at a minimum a plaintiff must allege: (1) "the time, place, and content of the alleged misrepresentation on which he or she relied;" (2) "the fraudulent scheme;" (3) "the fraudulent intent of the defendants;" and (4) "the injury resulting from the fraud." *Coffey v. Foamex L.P.*, 2 F.3d 157, 161-62 (6th Cir. 1993) (quotations omitted). Crucially, simply copying allegations, nearly verbatim, from filings made by federal and state regulators in other proceedings is insufficient to plead claims of fraud as such allegations are immaterial. *See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78-79 (S.D.N.Y. 2003).[25] Plaintiff's

---

[25] Importantly, the allegations Plaintiff copies from the regulatory proceedings do not pertain specifically to any of the particular Funds at issue. Rather, these allegations pertain generally to the "Funds" as a whole. (*Compare* Compl., Ex. V, ¶¶ 54-76 (specifically discussing the Open-End Funds, which are not at issue) *with* ¶ 77 (only generally discussing the four Closed-End Funds).) As such, even if such parroting of the regulatory complaints and consent orders was proper – it is not – these allegations are not sufficiently particularized to support Plaintiff's claims. *See In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d at 756 (similar allegations failed to meet even Rule 8(a)'s "more forgiving standard requiring plausibility").

Complaint, stripped of improper allegations of the regulators, fails to meet the standards of Rule 9(b). *See McLaughlin v. Chase Home Fin. LLC*, 519 Fed. Appx. 904, 906 (6th Cir. 2013) (affirming dismissal of fraud and misrepresentation claims where plaintiffs failed to allege by who and when the alleged misrepresentations were made and why they were intentional). As set forth above, Plaintiff fails to plead fraudulent intent (see supra Part A(2)) and injury from the fraud (see supra Part A(1)); thus, failing to meet the requirements of 9(b).

For failing to meet both the PSLRA and 9(b) pleading standards, Plaintiff's Complaint is due to be dismissed.

## VI.   PLAINTIFF FAILS TO ESTABLISH THAT ANY OF THE FUNDS' PUBLIC FILINGS CONTAINED ACTIONABLE MISREPRESENTATIONS OR OMISSIONS

Plaintiff's claims are based on four general categories of alleged misstatements and omissions: (1) the Funds' failure to disclose their true nature and risks; (2) the extent to which the Funds concentrated investments in certain types of securities (*i.e.*, ABS and MBS); (3) mis-valuation of securities held in the Funds' portfolios; and (4) the comparison of the Funds' returns against an inappropriate benchmark index. (*See generally* Compl., ¶ 4.) These allegations disregard the actual contents of the filings at issue, which disclosed the information Plaintiff alleges was misstated or omitted, and, therefore, Plaintiff's allegations fail as a matter of law.

### A.   The Funds' Offering Documents Disclosed the Risk Associated with an Investment in the Funds.

Plaintiff's claims hinge on his assertion that the Defendants omitted or misrepresented information about the Funds. However, Plaintiff's claims fail as a matter of law because Plaintiff has failed to adequately allege any material misstatements or omissions that are not directly contradicted by the actual public filings at issue. *See, e.g.*, *La Pietra v. RREEF Am., LLC*, 738 F.

Supp. 2d 432, 442-43 (S.D.N.Y. 2010) (dismissing fraud claims where "[m]any of the facts that the plaintiffs allege were omitted . . . were disclosed").

The Funds' risk disclosures were clear and unequivocal, stating in bold type on the cover page of each Fund's prospectus, that "**[t]he Fund[s'] strategy of investing the majority of its total assets in below investment grade debt securities and its expected use of leverage** *involve a high degree of risk. Stockholders can lose some or all of their investment.*" (Ex. E (RMA Prosp., Cover Page); *see also id.* Exs. A, C, G, (RMH, RSF, & RHY Prosp., Cover Pages) (same).) The Funds' Offering Documents also discussed the risks with respect to the assets in which the Funds invested, including the risks of below investment grade securities,[26] ABS,[27] and MBS,[28] among numerous others. (*See* Ex. M (Appx. of Disclosures).)[29] Thus, no investor who actually read the Funds' Offering Documents, as Plaintiff claims he did (*see* Compl., ¶ 425), could possibly have been misled about the risk of the Funds or the nature of the Funds' investments.

---

[26] Below Investment Grade Securities: "Below investment grade debt securities are commonly referred to as 'junk bonds.' Below investment grade quality securities are considered speculative with respect to an issuer's capacity to pay interest and repay principal and are susceptible to default or decline in market value due to adverse economic and business developments. These securities are less liquid than investment grade securities." (Exs. G (RHY Prosp., pp. 8, 28-29); A (RMH Prosp., pp. 7, 25); E (RMA Prosp., pp. 7-8, 26-27); C (RSF Prosp., pp. 8, 26-27).)

[27] ABS Risk: "Payment of interest and repayment of principal on asset-backed securities may be largely dependent upon the cash flows generated by the assets backing the securities . . . . Asset-backed security values may also be affected by the creditworthiness of the servicing agent for the pool. . . ." (Exs. G (RHY Prosp., pp. 9, 30); A (RMH Prosp., pp. 8, 26); E (RMA Prosp., pp. 8, 27-28); C (RSF Prosp., pp. 8, 27).)

[28] MBS Risk: "The value of mortgage-backed securities may . . . change due to shifts in the market's perception of issuers . . . . In addition, mortgage-backed securities are subject to the credit risk associated with the performance of the underlying mortgage properties." (Exs. G (RHY Prosp., pp. 9, 29-30); A (RMH Prosp., pp. 7, 26); E (RMA Prosp., pp. 8, 27); C (RSF Prosp., pp. 8, 27).)

[29] For the convenience of the Court, Defendants have attached an Appendix of Disclosures, which groups the Funds' disclosures (verbatim with respect to the Multi-Sector Fund and with citation to the substantially same language concerning the other Funds) by category.

## B.   The Funds Disclosed Their Concentration in ABS and MBS.

Plaintiff repeatedly alleges that the Funds misrepresented their compliance with an investment restriction providing that the Funds may not "purchase the securities of any issuer . . . if, as a result, 25% or more of the Fund's total assets would be invested in the *securities of companies the principal business activities of which are in the same industry*." (Compl., ¶ 75.)

Plaintiff has completely failed to plead a violation of this restriction. Plaintiff claims the Funds violated this restriction because "Asset-Backed Securities" and "Mortgage Lenders and Loan Correspondents" constitute "industries," as defined by the SEC's Standard Industrial Classification system, and the Funds invested 25% or more of their assets in ABS and MBS. (*Id.* at ¶¶ 81-83.) Plaintiff, however, misconstrues the meaning of this investment restriction as it does not restrict the types of securities in which the Funds could invest but rather limits investments "in the securities of companies *the principal business activities of which are in the same industry*." Plaintiff had not pleaded a violation of the actual investment restriction because he failed to plead a single fact regarding the issuing companies and the industry in which those companies principally operated.[30]

Moreover, even assuming Plaintiff adequately plead the Funds were in violation of the 25% industry concentration restriction – they were not – such a violation cannot serve as the basis of a fraud claim because, at all times, the extent of the Funds' investment in any category of security was disclosed. *See, e.g.*, *La Pietra*, 738 F. Supp. 2d at 442-43. In the Funds' annual

---

[30] Even if the Court were to assume that the Funds were in violation of their investment restrictions, Plaintiff has failed to state a claim. Breaching an investment restriction constitutes mismanagement, not fraud. At most, Plaintiff's allegations that the Funds violated investment restrictions and/or guidelines pertain to § 13 of the Investment Company Act of 1940, 15 U.S.C. § 80a-13, for which there is no private right of action. *See In re Regions Morgan Keegan Secs*, 743 F. Supp. 2d at 761-62 (finding no private right of action under § 13 and dismissing this claim).

and semi-annual reports, the Funds included an asset-allocation pie chart that clearly indicated that well over 25% of the Funds' assets were invested in ABS and MBS. (*See* Exs. I (2005 Ann. Rpt., pp. 4, 18, 34); M (Appx. of Disclosures).) Similarly, each Fund's disclosures also included a portfolio schedule that listed each security held by name and listed each category of securities as a percentage of the Fund's Net Assets. (*See* Ex. I (2005 Ann. Rep., p. 6 (listing "Asset-Backed Securities-Investment Grade" as 15.6% of RMA Fund Net Assets, and "Asset-Backed Securities-Below Investment Grade" as 55.2% of RMA Fund Net Assets).)[31] Overconcentration – or a violation of any investment restriction, for that matter – where it is openly disclosed, is not an actionable misrepresentation or omission upon which Plaintiff can base his claims. *See La Pietra*, 738 F. Supp. 2d at 442-43 (S.D.N.Y. 2010) (dismissing fraud claims where "[m]any of the facts that the plaintiffs allege were omitted . . . were disclosed"); *see also Paskowitz v. Pac. Capital Bancorp*, No. CV 09-6449, 2009 U.S. Dist. LEXIS 122365, at *12-13 (C.D. Cal. Nov. 6, 2009) (same).[32]

### C.   Plaintiff Has Failed to Plead Any Actionable Misrepresentations or Omissions With Respect to Valuation.

Plaintiff claims that Defendants deliberately overvalued certain securities in the Funds' portfolio (Compl., ¶¶ 4, 17-21, 124-150); however, Plaintiff fails to plead facts to support this claim. Although Plaintiff repeats the *allegations* of the SEC that Kelsoe submitted 262 supposedly unsupported price adjustments to Fund Accounting between January and July 2007,

---

[31] *See also* Ex. I (2005 Ann. Rpt., pp. 20-21 (27.5% and 62.8% of the High Income Fund's Net Assets in Investment Grade and Non-Investment Grade ABS, respectively), 36-37 (26.2% and 61.1% of the Strategic Fund's Net Assets in Investment Grade and Non-Investment Grade ABS, respectively)); Ex. J (2006 Ann. Rpt., pp. 6, 9, 22, 25, 40, 43, 54, 57-58); Ex. L (2007 Ann. Rpt., pp. 5, 8-9, 23, 26-27, 41, 44-45, 59, 62-63). The Funds' Semi-Annual and Quarterly reports contained asset schedules revealing similar concentrations. (*See, e.g.*, Exs. K, M-R.)

[32] Moreover, as previously stated, Plaintiff's own Complaint acknowledges that these facts were all disclosed prior to his first purchase of the Funds. (*See, e.g.*, ¶¶ 365-378.)

Plaintiff didn't even own the Funds during that time. Moreover, Plaintiff includes no factual allegations regarding the effect of these adjustments on the Funds' net asset value or whether the adjustments even pertained to the Funds at issue in this litigation. Similarly, Plaintiff fails to plead facts supporting any conclusion that Mr. Kelsoe's alleged "manipulation" or "screening" of dealer quotes materially affected the Funds at issue – much less at a time when Plaintiff actually owned the Funds. (*See* Compl., ¶ 135.) While Plaintiff asserts that the Funds' NAVs were "inflated" and "not timely written down," they fail to quantify these assertions in any way and rely entirely on conclusory statements. (*See, e.g.*, Compl., ¶¶ 138, 147, 307, 323, 334.) What is more, Plaintiff's Complaint alleges that as of August 14, 2007, it was known and the Funds' values were impacted by the knowledge that "the Funds internal accounting and valuation processes were inadequate." (Compl., ¶ 375.) This is two months prior to Plaintiff's first purchase of the Funds. Based on the foregoing, Plaintiff's allegations as to valuation and pricing are insufficient as a matter of law. *See, e.g.*, Fed. R. Civ. P. 9(b).

### D.     Plaintiff Fails to Allege Facts that Would Establish that the Funds' Choice of a Benchmark Index Supports a Claim under the Securities Laws.

Plaintiff alleges that "[t]he [Lehman] High Yield Index was an inappropriate peer or benchmark for comparison with the Funds because the holdings comprising the Lehman High Yield Index were not comparable to the Funds' holdings. . . . The Funds' portfolios were inherently riskier than, and deviated greatly from, the portfolios within the High Yield Index." (Compl., ¶ 172.)[33] In *Hunt*, the Second Circuit rejected such an argument and concluded that

---

[33] By alleging that the Funds' choice of index was "inappropriate," Plaintiff concedes that choice of an index involves an exercise of discretion. Plaintiff has pleaded no facts demonstrating that the Funds' selection of an allegedly "inappropriate" index was intentional or deliberate. By proposing alternative indices based on a hindsight analysis of which indices performed similarly to the Funds during the credit crisis, Plaintiff merely proposes to substitute his own hindsight judgment for that of the Funds. (Compl., ¶¶ 180, 182.)

"[t]he chart purported only to compare the Fund's *returns* to those of the Lehman Brothers indexes. No reasonable investor could have viewed this chart as an exhaustive description of the Fund's *risks*." *Hunt v. Alliance N. Am. Gov't Income Trust, Inc.*, 159 F.3d 723, 730 (2d Cir. 1998) (dismissing claim that the use of a benchmark index was misleading). Additionally, the Funds affirmatively disclosed that their portfolio composition could (and did) deviate from the chosen bond fund benchmark. (*See* Exs. J (2006 Ann. Rpt., p. 4) (The "prospectus gives the management team latitude to look at sectors that are not in the index."); *see also* M (Appx. of Disclosures).)

Plaintiff also seeks to infer fraud from the fact that the Funds ultimately underperformed their benchmark and other "peer funds." (*See, e.g.*, Compl., ¶ 178 ("[T]he Funds collapsed in late 2007 while the value of the 35 non-RMK closed-end funds held up through the summer of 2008").) Such a theory is classic fraud by hindsight, and fails as a matter of law. *Olkey v. Hyperion 1999 Term Trust, Inc.*, 98 F.3d 2, 8 (2d Cir. 1996) ("To show misrepresentation, the complaint must offer more than allegations that the portfolios failed to perform as predicted."); *In re Huntington Bancshares Inc. Sec. Litig.*, 674 F. Supp. 2d 951, 958-960 (S.D. Ohio 2009) (rejecting allegations of fraud by hindsight). Thus, Plaintiff has failed to allege actionable misstatements or omissions based on either the chosen benchmark and/or the performance of the Funds compared to their peers.

## VII. PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO DEMONSTRATE THAT ANY OF THE DEFENDANTS ARE CONTROL PERSONS UNDER SECTIONS 15 OR 20(A)

Plaintiff alleges control person liability against the Director Defendants under Section 15 of the 1933 Act and against the Director Defendants, Officer Defendants, MAM, MK Holding,

and Regions under Section 20(a) of the 1934 Exchange Act. (Compl., ¶¶ 486-495; 503-510.)
These claims fail as a matter of law.[34]

As an initial matter, Plaintiff must adequately plead a primary violation of the securities
laws to maintain an action under Section 15 or Section 20(a). *See P.R. Diamonds*, 364 F.3d at
696 (requiring "an underlying violation" to establish a Section 20(a) claim); *Azzolini v. CorTS
Trust II*, No. 1:03-CV-1003, 2005 U.S. Dist. LEXIS 31853, at *42 (E.D. Tenn. Sept. 16, 2005)
(requiring a "primary securities law violation" to state a claim under Section 15). Because
Plaintiff's primary securities law violations under Sections 11, 12(a)(2), and 10b are due to be
dismissed, Plaintiff's claims for control person liability under Sections 15 and 20(a) must also be
dismissed.[35]

Even assuming Plaintiff has alleged an underlying securities law violation – he has not –
Plaintiff's Sections 15 and 20(a) claims are nonetheless due to be dismissed because Plaintiff has
failed to plead the requisite "control" necessary to support his claims.

To state a claim for control person liability under Section 20(a), Plaintiff must plead facts
showing that the controlling Defendants "directly or indirectly controlled the person liable for

---

[34] Plaintiff may not seek to hold the Director and Officer Defendants liable both primarily under
Sections 11 and 10(b), and as control persons under Sections 15 and 20(a). *See, e.g., Kalnit v.
Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999); *see also P.R. Diamonds*, 364 F.3d at 697 n.4
(noting this principle but declining to decide the issue where plaintiffs had not pleaded a primary
violation). Control person liability under Sections 15 and 20(a) is an alternative, and not a
supplement to, primary liability under Sections 11 and 10(b). *See Lemmer v. Nu-Kote Holding,
Inc.*, No. 3:98-cv-0161, 2001 U.S. Dist. LEXIS 13978, at *41-42 (N.D. Tex. Sept. 6, 2001), *aff'd*
71 Fed. Appx. 356 (5th Cir. 2003).

[35] For reasons outlined herein, Plaintiff has failed to plead violations of the 1933 and 1943 Acts
against Morgan Keegan and the Individual Defendants. (*See supra* Part V.) Likewise, for reasons
discussed more fully in co-defendants' brief, Plaintiff has failed to plead primary violations of
the 1933 and 1934 Acts against the Fund defendants as well. (See Funds' Brief, PACER Doc.
48-1, at Parts III-V.) Thus, Plaintiff has failed to plead primary violations of the federal securities
laws upon which to base their control person claims under Sections 15 and 20(a).

the securities law violation." *P.R. Diamonds, Inc.*, 364 F.3d at 696.[36] Here, Plaintiff's only allegation as to MK Holding is that MK Holding controlled MAM (Compl., ¶ 505), which is insufficient as a matter of law as MAM is not alleged to be a primary violator of Section 10(b). *See, e.g.*, *D.E. & J. Ltd. P'ship v. Conaway*, 133 F. App'x 994, 1001 (6th Cir. 2005) (dismissing control person claim where allegedly controlled entity was not charged with a primary violation of the securities laws). With respect to MAM and Regions (as control persons of the Funds and Morgan Keegan, respectively), Plaintiff's allegations also fail as a matter of law. The contractual roles performed by MAM with respect to the Funds do not create secondary liability. *See Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 191 (1994). With respect to Regions, Plaintiff has failed to plead Regions had the requisite control to be liable for the acts of Morgan Keegan. *See U.S. v. Bestfoods*, 524 U.S. 51, 61 (1998) ("It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." (citations omitted)); *see also Lustgraaf v. Behrens*, 619 F.3d 867, 878 (8th Cir. 2010) (citing cases from the 1st and 11th circuits in holding that more than allegations of ownership are required for liability under Section 20(a)). Thus, Plaintiff's 20(a) claims against Defendants fail as a matter of law.

    To state a claim for control person liability under Section 15, Plaintiff must plead facts showing that the controlling Defendants possessed both "power to control the specific transaction or activity upon which the primary violation is predicated" and "actual participation (*i.e.*, exercise [of] control) in the operations of the primary violator in general." *Azzolini*, 2005

---

[36] "'Control' is defined as 'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *P.R. Diamonds, Inc.*, 364 F.3d at 696-697 (quoting 17 C.F.R. § 230.405).

U.S. Dist. LEXIS 31853 at *42. Plaintiff fails to plead facts sufficient to establish that the Director Defendants exercised control over the Funds and/or Morgan Keegan and instead rely on a conclusory assertion that the Director Defendants' positions and job descriptions automatically gave them control over the Funds and the purportedly fraudulent conduct. (*See* Compl., ¶ 490.) Such pleading is insufficient. *Frank v. Dana Corp.*, 649 F. Supp. 2d 729, 746 (N.D. Ohio 2009).

## <u>CONCLUSION</u>

For the reasons set forth herein, it is respectfully requested that this Court dismiss Plaintiff's Complaint in its entirety with prejudice.

Respectfully submitted this 12th day of November, 2013.

s/ Peter S. Fruin
Peter S. Fruin

Counsel for Defendants
Morgan Keegan & Company, Inc.,
Regions Financial Corporation,
MK Holding, Inc., Morgan Asset
Management, Inc., James C. Kelsoe, Jr.,
Brian B. Sullivan, Joseph Thompson Weller,
Allen B. Morgan, and J. Kenneth Alderman

**<u>OF COUNSEL:</u>**

Peter S. Fruin
**MAYNARD, COOPER & GALE, P.C.**
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203-2602
(205) 254-1000
(205) 254-1999 (fax)
pfruin@maynardcooper.com

Shepherd D. Tate
Michael A. Brady
**BASS, BERRY & SIMS PLC**
The Tower at Peabody Place
100 Peabody Place
Memphis, Tennessee 38103
(901) 543-5900
(901) 543-5999 (fax)
state@bassberry.com
mbrady@bassberry.com

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on November 12, 2013 a true and correct copy of the foregoing document was forwarded by electronic means through the Court's ECF System upon the following:

Christopher S. Campbell
Laura S. Martin
**HARRIS SHELTON HANOVER WALSH, PLLC**
One Commerce Square Building
40 S. Main Street, Suite 2700
Memphis, Tennessee 38103
(901) 525-1455
(901) 526-4086 (fax)
ccampbell@harrisshelton.com
lmartin@harrisshelton.com

James A. Dunlap, Jr.
**JAMES A. DUNLAP JR. & ASSOCIATES LLC**
310 Windsor Gate Cove NE
Atlanta, Georgia 30342
(404) 354-2363
(404) 745-0195 (fax)
jim@jamesdunlaplaw.com

*Counsel for Plaintiffs*

Kevin P. Broughel
Kevin C. Logue
**PAUL HASTINGS LLP**
75 East 55th Street
New York, New York 10022
(212) 318-6483
(212) 230-7807 (fax)
kevinbroughel@paulhastings.com
kevinlogue@paulhastings.com

*Counsel for Defendants RMK High Income Fund, Inc., RMK Strategic Income Fund, Inc., RMK Advantage Income Fund, Inc., and RMK Multi-Sector High Income Fund, Inc.*

R. Harold Meeks , Jr.
**JAMES BATES BRANNAN GROVER LLP**
The Lenox Building
3339 Peachtree Road NE
Suite 1700
Atlanta, Georgia 30326
(404) 997-6020
(404) 997-6021 (fax)
hmeeks@jamesbatesllp.com

*Counsel for Defendant Carter E. Anthony*


s/ Peter S. Fruin
OF COUNSEL