**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| In re REGIONS MORGAN KEEGAN SECURITIES, DERIVATIVE and ERISA LITIGATION | ) ) ) | |
| | ) | |
| This Document Relates to: | ) | |
| | ) | |
| W. Thomas Small, Jr., | ) | No. 2:09-2009 SMH V |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RMK High Income Fund, Inc., et al., | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| No. 2:13-cv-02654-SHM-dkv | ) | |

**ORDER**

        Before the Court are Defendant Carter Anthony's ("Anthony")

November 11, 2013 Motion to Dismiss Plaintiff's Complaint, Fund[1]

Defendants' November 12, 2013 Motion to Dismiss Complaint, and

Individual[2] Defendants' November 12, 2013 Motion to Dismiss

---

[1] The "Fund Defendants" or the "Funds" are the RMK High Income Fund, Inc. ("RMH"), RMK Strategic Income Fund, Inc. ("RSF"), RMK Advantage Fund, Inc. ("RMA"), and RMK Multi-Sector High Income Fund, Inc. ("RHY"). The names of the Funds in this action were changed to Helios High Income Fund, Inc., RMK Strategic Income Fund, Inc., Helios Advantage Fund, Inc., and Helios Multi-Sector High Income Fund, Inc. after the Funds were acquired by Hyperion Brookfield Asset Management, Inc. on July 29, 2008.
[2] The "Individual Defendants" are Morgan Keegan & Company, Inc. ("Morgan Keegan"), Regions Financial Corporation ("Regions"), MK Holding, Inc. ("MK

Plaintiff's Complaint.[3]   (ECF. Nos. 44, 48-49.)[4]   Plaintiff W. Thomas Small, Jr. ("Plaintiff") responded to the motions to dismiss on January 14, 2014.  (Pl. Resp., ECF No. 55.)  The Fund Defendants and the Individual Defendants replied on January 28, 2014.  (Funds' Reply, ECF No. 60; Indiv. Reply, ECF No. 59.)

On January 7, 2014, Plaintiff filed a Motion for Leave to File Amended Complaint ("Motion to Amend").  (Mot. Amend, ECF No. 54.)  Defendants responded in opposition to Plaintiff's Motion to Amend on January 21, 2014.  (See ECF No. 56-58.)

I. **Background**

Plaintiff has filed suit against Defendants in the Closed-End Fund Litigation.  Plaintiff asserts claims based on his purchase of publicly traded securities of the Funds.  The Funds are closed-end mutual Funds that were "issued, underwritten, sold, and managed by two wholly owned and controlled subsidiaries of Defendant Regions Financial Corporation ("RFC")."  (Compl. ¶ 1.)  Plaintiff alleges that, as early as 2005, the Funds invested heavily in Asset-Backed Securities

---

Holding"), Morgan Asset Management, Inc. ("MAM"), James C. Kelsoe, Jr. ("Kelsoe"), Brian B. Sullivan ("Sullivan"), Joseph Thompson Weller ("Weller"), Allen B. Morgan ("Morgan"), and J. Kenneth Alderman's ("Alderman").
[3] Anthony, Fund Defendants, and Individual Defendants are collectively, the "Defendants."
[4] Anthony relies on the Individual Defendants' Motion to Dismiss and accompanying Memorandum of Law ("Regions Memorandum").  (ECF No. 50.)  The Fund Defendants use the same arguments in their Motion to Dismiss as the Individual Defendants.  (ECF No. 48.)  When the Court refers the Defendants' arguments, the Court is relying on the Regions Memorandum unless otherwise stated.

("ABS") and, in particular, subprime mortgage-related ABS, in violation of a "fundamental investment limitation" meant to assure diversification of assets in which the Funds could invest. (Id. ¶¶ 4, 288.) Plaintiff asserts that Defendants misrepresented the types of assets and the true value of the assets in which the Funds invested. (Id.) Plaintiff alleges that, as of March 31, 2007, the Funds falsely classified their portfolio securities as corporate bonds and preferred stocks in SEC filings, overstated the values of their portfolio securities, mischaracterized the Funds as "high yield," and misrepresented the professional management of the Funds' portfolios. (Id. ¶¶ 4, 88.)

Plaintiff filed suit on August 22, 2013. (See ECF No. 1.) The Complaint alleges eight causes of action. (Id. ¶¶ 460-541.) Plaintiff alleges violations of §§ 11, 12(a)(2), and 15 of the Securities Act of 1933, 15 U.S.C. § 77a ("'33 Act"), and §§ 10(b) and 20(a), and Rule 10b-5 of the Securities Exchange Act of 1934, 15 U.S.C. § 78a ("'34 Act") (collectively, the "Federal Law Claims"). (Id. ¶¶ 460-502.) Plaintiff alleges violations of the Tennessee Consumer Protection Act of 1977 ("TCPA"), T.C.A. § 47-18-104, the Tennessee Securities Act ("TSA"), T.C.A. §§ 48-2-1, et seq., and the Mississippi Securities Act ("MSA"), M.C.A. §§ 75-71-101, et seq. (the "State Law Claims"). (Id. ¶¶ 511-41.) Plaintiff seeks a declaratory judgment, compensatory

3

damages, prejudgment interest, rescission rights, costs and reasonable attorneys' fees, disgorgement of all fees that Defendants earned, and punitive or treble damages. (Id. § XII.)

Defendants argue that (1) Plaintiff's claims are time barred; (2) Plaintiff lacks standing under Section 12(a)(2) of the '33 Act; (3) Plaintiff did not plead reliance; (4) Plaintiff's claims are derivative and cannot be brought in a direct action; (5) Plaintiff's fraud claims fail to satisfy the pleading requirements of the Private Securities Litigation Reform Act ("PLSRA"), 15 U.S.C. § 78u-4, and Rule 9(b) of the Federal Rules of Civil Procedure; (6) Plaintiff cannot show that there were any actionable misrepresentations or omissions; and (7) Plaintiff cannot demonstrate that any of the Defendants are control persons under § 15 of the '33 Act or § 20(a) of the '34 Act. (Regions Memo. at 2, ECF No. 50.)

On January 7, 2014, Plaintiff filed his Motion to Amend. (ECF No. 54.) Plaintiff seeks to (1) more fully describe the Defendants' conduct related to the Funds' SEC filings; (2) add the specific allegation that Plaintiff would not have been able to discover evidence of his claims until at least August 23, 2011; and (3) clarify that employees and officers of Morgan Keegan and MAM were members of the Pricing Committee. (Mot. Amend at 1-2.) Defendants oppose those amendments as futile.

4

(<u>See</u> ECF Nos. 56-58.)[5]

## II. Jurisdiction

Plaintiff brings his Federal Law Claims under the federal securities laws. This Court has federal question jurisdiction under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's State Law Claims under 28 U.S.C. § 1367.

## III. Standard of Review

Federal Rule of Civil Procedure 15(a)(2) provides that a Court should give leave to amend a pleading freely "when justice so requires." A court should grant leave to amend "'if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief . . . .'" <u>Jones v. Western Reserve Transit Auth.</u>, 455 Fed. App'x 640, 645 (6th Cir. 2012) (quoting <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962)). A motion to amend should assert with particularity the grounds for amendment. <u>Patterson v. Novartis Pharms Corp.</u>, 451 Fed. App'x 495, 499 (6th Cir. 2011). Motions to amend should be denied if amendment would be futile. <u>Colvin v. Caruso</u>, 605 F.3d 282, 294 (6th Cir. 2010). Amendment would be futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss. <u>Riverview Health Inst. LLC v. Medical Mut. Of Ohio</u>, 601 F.3d

---

[5] Anthony and the Fund Defendants rely on the Individual Defendants' Response ("Regions Response") to Plaintiff's Motion to Amend. (ECF Nos. 56, 58.) When the Court refers the arguments in the Defendants' Response, the Court is relying on the Regions Response. (Regions Resp., ECF No. 58.)

505, 512 (6th Cir. 2010) (citing <u>Rose v. Hartford Underwriters</u> <u>Ins. Co.</u>, 203 F.3d 417, 420 (6th Cir. 2000)).

In addressing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled factual allegations as true. <u>League of United Latin Am. Citizens v. Bredesen</u>, 500 F.3d 523, 527 (6th Cir. 2007). A plaintiff can support a claim "by showing any set of facts consistent with the allegations in the complaint." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 563 (2007). This standard requires more than bare assertions of legal conclusions. <u>Bovee v. Coopers & Lybrand C.P.A.</u>, 272 F.3d 356, 361 (6th Cir. 2001). "[A] formulaic recitation of the elements of a cause of action will not do." <u>Twombly</u>, 550 U.S. at 555. Any claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (<u>per</u> <u>curiam</u>). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555.)

Nonetheless, a complaint must contain sufficient facts "to 'state a claim to relief that is plausible on its face'" to survive a motion to dismiss. <u>Ashcroft v. Iqbal</u>, 129 S. Ct.

6

1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).  "This plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citing Twombly, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 1949 (citation omitted).  A plaintiff with no facts and "armed with nothing more than conclusions" cannot "unlock the doors of discovery."  Id. at 1950.

Where a plaintiff makes allegations of fraud, including securities fraud, he must meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  Frank v. Dana Corp., 547 F.3d 564, 569-70 (6th Cir. 2008).  Rule 9(b) requires that a party "alleging fraud or mistake . . . state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  This heightened pleading standard mandates that plaintiffs alleging fraud 1) specify which statements were fraudulent, 2) indentify the defendant(s) who made the fraudulent statements, 3) describe "when and where the statements were made" and 4) "explain why the statements were fraudulent."  Frank, 547 F.3d at 570 (citation and internal quotation marks omitted).  "At a minimum, [p]laintiffs must allege the time, place and contents of the misrepresentations upon which they relied" to satisfy Rule 9.  Id. (citing Bender

v. Southland Corp, 749 F.2d 1205, 1216 (6th Cir. 1984)).

    **IV.  Analysis**

        **A.  Timeliness**

    Defendants argue that Plaintiff's proposed amendments would be futile because his claims are time barred.  (Resp. at 6, ECF No. 57.)  Defendants argue that Plaintiff's claims have not been timely filed because American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974), does not toll the running of the applicable statutes of repose.  (Regions Memo. at 9.)

        **B.  State Law Claims**
            **1. American Pipe Does Not Toll Plaintiffs' State Law Claims**

    Plaintiff alleges three State Law Claims.  Count VI of the Complaint alleges that Defendants violated the TCPA, Count VII alleges that they violated the TSA, and Count VIII alleges that they violated the MSA.  (Compl. ¶¶ 511-41.)  Plaintiff's claims are based on acts that occurred as early as June 6, 2005.  (Id. ¶ 288.)  Defendants argue that Plaintiff's State Law Claims are barred by the applicable five-year statutes of repose provided by T.C.A. § 47-18-110, T.C.A. § 48-1-122(h), and M.C.A. § 75-71-509(j)(2), respectively.  (Id. at 11.)

    Plaintiff relies on the filing of Willis et al. v. Morgan Keegan & Company, Inc. et al., No. 2:07-cv-02830-SHM, to toll the applicable statutes of limitation and repose.  (Pl. Resp. at 6, ECF No. 55.)  The claims in Willis were based on federal law.

8

Plaintiff alleges state law claims in this action. Those claims "are not identical to those asserted in the [_Willis_] class action, and the tolling effect of _American Pipe_ is inapplicable under these facts." See Zarecor_et al. v. Morgan Keegan & Company, Inc._, 2013 WL 5687618 (E.D. Ark. Oct. 15, 2013). Plaintiff's State Law Claims accrued more than five years ago. The pendency of _Willis_ did not toll the running of the statutes on those claims.

### 2. The Discovery Rule Does Not Save Plaintiff's State Law Claims

Defendants argue that, because the discovery rule does not apply to statutes of repose, Plaintiff's argument that the discovery rule tolls the applicable statute must fail. (Reply at 1, ECF No. 59.)

Defendants' argument is well-taken. "[S]tatutes of repose affect the underlying right, not just the remedy, and thus they 'run without interruption once the necessary triggering event has occurred, even if . . . the plaintiff has not yet, or could not have yet, discovered that [he] has a cause of action.'" Fed. Hous. Fin. Agency v. UBS Americas Inc._, 712 F.3d 136, 140 (2d Cir. 2013) (quoting P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 102-03 (2d Cir. 2004)). In _Spence v. Miles Labs., Inc._, the plaintiff filed his suit less than a year after discovering that he had contracted AIDS from a contaminated

blood product produced by the defendant.   37 F.3d 1185, 1187 (6th Cir. 1994).   The Sixth Circuit held that the plaintiff's claims were barred by the applicable one-year statute of repose, although the plaintiff did not discover his injury until years after his exposure.   Id. at 1191.   The Sixth Circuit adopted the district court's conclusion that "[t]he judicially created discovery rule cannot extend the ceiling or absolute time limit established by the statute of repose."   Spence v. Miles Labs., Inc., 810 F.Supp 952 (E.D. Tenn. 1992).

Plaintiff's argument that fraudulent concealment tolls the applicable statute of repose fails for the same reason.   See Cates v. Stryker Corp., 2012 WL 256199, at *5-*6 (E.D. Tenn. Jan. 27, 2012).

Plaintiff's State Law Claims accrued more than five years before Plaintiff filed his Complaint.   Plaintiff's State Law Claims are time barred, and amendment would be futile. Plaintiff's Motion to Amend is DENIED as to Plaintiff's State Law Claims.   Defendants' Motions to Dismiss are GRANTED as to the State Law Claims.

### C. Federal Law Claims

Plaintiff alleges three claims under the '33 Act.   Count I alleges that the Funds and the Director Defendants[6] violated § 11 of the '33 Act, 15 U.S.C. § 77k, Count II alleges that RHY

---

[6] "Director Defendants" refers to Allen B. Morgan, Jr. and J. Kenneth Alderman.

and Morgan Keegan violated § 12(a)(2) of the '33 Act, 15 U.S.C. § 77l, and Count III alleges control person liability under § 15 of the '33 Act, 15 U.S.C. § 77(o).   (Compl. ¶¶ 460-95.) Plaintiff alleges two claims under the '34 Act.   Count IV alleges that the Funds, Morgan Keegan, and the Officer Defendants[7] violated § 10(b) of the '34 Act and Rule 10b-5 promulgated thereunder, 15 U.S.C. § 78j(b); 17 C.F.R § 240.10b-5.   Count V alleges that the Officer Defendants, Director Defendants, MAM, MK Holding, and RFC were "control persons" under § 20 of the '34 Act, 15 U.S.C. § 78t(a).   (Id. ¶¶ 496-510.)

Plaintiff must successfully state a primary violation of the '33 Act and § 10(b) of the '34 Act to maintain his control person claims under Section 15 of the '33 Act and Section 20 of the '34 Act.   See 15 U.S.C. 77(o)(a); 15 U.S.C. § 78t(a); J&R Mktg. v. Gen. Motors Corp., 549 F.3d 384, 398 (6th Cir. 2008); PR Diamonds, Inc. v. Chandler, 364 F.3d 671, 696 (6th Cir. 2004).

Defendants argue that Plaintiff's '33 Act claims are barred by the applicable three-year statute of repose at 15 U.S.C. § 77m.   (Regions Memo. at 8.)   Defendants argue that Plaintiff's '34 Act claims are barred by the applicable five-year statute of repose at 28 U.S.C. § 1658(b).   (Id. at 9.)

---

[7] "Officer Defendants" refers to James C. Kelsoe, Jr., Brian B. Sullivan, Joseph T. Weller, and Carter Anthony.

_Willis_, filed on December 21, 2007, was a securities class action on behalf of all persons who purchased or acquired shares of RMH, RSF, RMA, or RHY.

### 1. _American Pipe_ **Tolled the Applicable Statutes of Repose**

Defendants argue that _American Pipe_ does not toll the applicable statutes of repose for Plaintiff's Federal Law Claims. The Court held in _Willis_ that _American Pipe_ applies to statutes of repose. (Willis Order at 23-24, No. 07-cv-2830, ECF No. 246.) "Tolling the limitations period while class certification is pending does not compromise the purposes of statutes of limitation and repose." _Joseph v. Wiles_, 223 F.3d 1155, 1167 (10th Cir. 2000). Many courts have applied _American Pipe_ tolling to statutes of repose when addressing the issue of legal tolling under the '33 Act. _See e.g._, _Maine State Ret. Sys. v. Countrywide Fin. Corp._, 722 F.Supp.2d 1157, 1166 (C.D. Cal. 2010); _In re Flag Telecom Holdings, Ltd. Sec Litig._, 352 F.Supp.2d 429, 455, n. 19 (S.D.N.Y. 2005). _American Pipe_ applies to the statutes of repose applicable to claims under the '34 Act as well.

Defendants argue that the Second Circuit's recent decision in _Police & Fire Retirement Systems v. Indymac MBS, Inc._ should change the Court's analysis of the application of _American Pipe_ to statutes of repose, because the Second Circuit held that

12

American Pipe does not apply to statutes of repose.  721 F.3d 95, 109 (2d Cir. 2013).

The Second Circuit's Indymac decision is not binding on this Court.  On March 10, 2014, the Supreme Court granted the petition for writ of certiorari in Indymac.  Id., cert. granted, 82 U.S.L.W 3371 (U.S. March 10, 2014) (No. 13-640).  The Court is not persuaded to change its analysis of American Pipe based on Indymac.

### 2. Derivative v. Direct Action

Defendants argue that Plaintiff's proposed amendment would be futile because the Complaint focuses on the Defendants' alleged mismanagement of the Funds, and such claims may only be raised in a derivative action.  (Regions Memo. at 15.) Defendants cite the opinion of the Alabama Supreme Court in Ex parte Regions Financial Corp., 67 So.3d 45 (Ala. 2010).

Under general principles of corporate law, "if a shareholder's investment is frittered away by corporate mismanagement, only the corporation can recover."  See, e.g., Lubin v. Skow, 382 F. App'x 866, 870 (11th Cir. 2010) (citation omitted).  A plaintiff may not plead a cause of action under the federal securities laws by alleging "fraud by hindsight."  That occurs when a plaintiff claims that (1) the company should have disclosed bad news earlier although it eventually revealed that news, or (2) a defendant's optimistic past statements were

fraudulent because later developments proved them to be false. In re Atlas Air Worldwide Holdings, Inc. Sec. Litig., 324 F. Supp. 2d 474, 494 (S.D.N.Y. 2004).

Plaintiff's claims differ from the prohibited categories. Material misrepresentations in a registration statement of the risk posed by the Funds' holdings are actionable under the `33 Act. See 15 U.S.C. § 77k(a); In re Citigroup, Inc. Bond Litig., 723 F.Supp.2d 568, 584-85 (S.D.N.Y. 2010). An allegation that a statement was false when made is actionable under the federal securities laws and does not state an invalid mismanagement or fraud-by-hindsight claim. In re Atlas Worldwide Holdings, 324 F. Supp. 2d at 494 n.11. Plaintiff alleges that Defendants stated that they would not invest more than 15% of the Funds' assets in illiquid securities or more than 25% of the Funds' assets in securities related to the same industry. (Compl. ¶¶ 81-87.) Plaintiff also alleges that those statements were misleading when made because the Funds were, at that time, in violation of the stated restrictions. (See, e.g., id.) Whether Defendants made those statements is a question of fact not justiciable on a motion to dismiss. See Erickson, 551 U.S. at 93-94 (2007) (per curiam) (cautioning courts that factual disputes are not for resolution on motions to dismiss and that the facts as alleged should be read in the light most favorable to the plaintiff).

14

Plaintiff's allegations are sufficient. He has stated claims under the `33 Act. *In re Citigroup*, 723 F.Supp.2d at 584-85; *In re Atlas Worldwide Holdings*, 324 F. Supp. 2d at 494 & n.11. "The fact that [] Plaintiffs' allegations could potentially state claims for corporate mismanagement . . . does not negate the applicability of federal securities laws, if the statements made in the Prospectus were materially false or misleading at the time they were made." *In re Surebeam Corp. Sec. Litig.*, 2005 WL 5036360, at *13 (S.D. Cal. Jan. 3, 2005).

### 3. Plaintiff Fails to Plead Reliance Adequately for his '34 Act Claims

Defendants argue that Plaintiff's Section 10(b) and Rule 10b-5 claims must fail because he cannot plead reliance based on purchases of securities he made after Defendants had disclosed misrepresentations and omissions. (Regions Memo. at 13.) Defendants argue that, because the Complaint alleges information that Defendants disclosed before Plaintiff began investing in October 2007, Plaintiff cannot prove reliance. (*Id.* at 14.) Plaintiff argues that he is entitled to the presumption of reliance under *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972), because the proposed Amended Complaint alleges claims based in part on omissions. (Pl. Resp. at 17.)

Plaintiff's argument is not well-taken. "[U]nder the federal securities laws, '[a]n investor may not justifiably rely

15

on a misrepresentation if, through minimal diligence, the investor should have discovered the truth.'" Int'l Motor Sports Grp., Inc. v. Gordon, 1999 WL 619633, at *7 (S.D.N.Y. 1999) (quoting Brown v. E.F. Hutton Grp., Inc., 991 F.2d 1020, 1033 (2d Cir. 1993)). "The proper standard for determining whether [a plaintiff] justifiably relied on a misrepresentation or omission is a recklessness standard." Molecular Tech. Corp. v. Valentine, 925 F.2d 910, 918 (6th Cir. 1991) (citing Zobrist v. Coal-X, Inc., 708 F.2d 1511, 1516 (10th Cir. 1983)). A plaintiff may not "intentionally close his eyes and refuse to investigate, concerning the circumstances, in disregard of a risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." Zobrist, 708 F.2d at 1517 (internal quotation marks and citation omitted). At a minimum, "a plaintiff may not . . . justifiably rely on a misrepresentation where its falsity is palpable." Zobrist, 708 F.2d at 1517 (internal quotation marks and citation omitted).

Plaintiff alleges that on July 20, 2007, an article (the "Bloomberg Article") provided "information disclosed for the first time" to investors. (Compl. ¶¶ 370-71.) The Bloomberg Article disclosed that, "Jim Kelsoe . . . dropped to last place this year because of losses tied to mortgages for people with poor credit." (Id. ¶ 371.) The Bloomberg Article disclosed

16

that RMH "fell 4.2 percent from the beginning of 2007 . . ." and
that RMH "had 15 percent of its assets in the subprime market
and at least the same amount in other mortgage debt in May."
(Id.)   "The fund has as much as 25 percent of assets in
subprime-related securities in 2005." (Id.)   The Bloomberg
Article disclosed that, "Kelsoe . . . favors bonds backed by
assets . . . and mortgage loans, as well as collateralized debt
obligations, or CDOs, instead of corporate bonds, which made up
only 21 percent of the fund in March." (Id.)

Plaintiff alleges that the Bloomberg Article disclosed to
investors that "Kelsoe's funds were not like other high yield
bond funds – they were a 'big exception' and 'worst in [their]
class.'" (Id. ¶ 372.)   Plaintiff alleges that the Bloomberg
Article's "partial corrective disclosures" caused the Funds'
share prices to decline. (Id.)

Plaintiff alleges that on August 11, 2007, another article
(the "Commercial Appeal Article") disclosed information about
the Funds. (Id. ¶ 373.)   The Commercial Appeal Article
disclosed that, "In the securities market, the securities are
divided up in pieces called tranches. . . . If your tranche has
low priority, you may not get paid, and that may be the
situation the Morgan Keegan fund faces in some cases . . . ."
(Id.) The article disclosed that, "Kelsoe runs the fund[s] in a
manner that is very, very different than his high-yield bond

fund peers . . . ." (Id.) The article stated that, "Kelsoe invested in securities backed by assets, such as mortgages . . . ." (Id.)

Plaintiff alleges that on August 14, 2007, the Funds issued Form 8-K reports disclosing that "they needed to retain an independent valuation consultant in order to properly value their portfolio securities." (Id. ¶ 374.) Plaintiff alleges that the Form 8-K reports "disclosed to informed investors that the Funds' internal accounting and valuation processes were inadequate." (Id. ¶ 375.) Plaintiff alleges that the Funds' share prices "declined significantly as a result of that disclosure." (Id.)

Plaintiff alleges that on August 16, 2007, another news article (the "Second Commercial Appeal Article") disclosed information about the Funds. (Id. ¶ 376.) The Second Commercial Appeal Article disclosed that, "The Memphis-based group's three-year-old Multi-Sector High Income, Strategic Income, Advantage Income and High Income funds share prices dropped from 53 to 57 percent since June 7, [2007]." (Id.) "The fund portfolios are heavy with investments in securities backed by subprime mortgages . . . and bonds used to finance corporate buyouts." (Id.) Plaintiff alleges that on August 16, 2007, another news article (the "Birmingham News Article"), disclosed similar information about the Funds. (Id. ¶ 377.)

A letter was published on August 17, 2007 (the "Commercial Appeal Letter"), which disclosed that, "Regions Morgan Keegan high yield mutual funds managed by James Kelsoe have seemingly permanent losses from the concentration, perhaps over-concentration if one reads the prospectuses, in investments related to subprime mortgages." (Id.)

Plaintiff alleges that the stock price drops related to the disclosures in the aforementioned articles "were dramatically larger than any losses Plaintiff would have sustained as a result of ordinary market forces." (Id. ¶¶ 372,375.)

On October 2, 2007, Plaintiff began investing in the Funds. (E-Trade Invest. Acct. at 1, Exh. X.)  The above disclosures state that the Funds were overconcentrated in asset-backed securities, the Funds did not operate like traditional bond funds, and that the Funds' valuation procedures were suspect. Those allegations are part of the basis of Plaintiff's Complaint. (Compl. ¶ 4.)

Plaintiff alleges that he relied on Kelsoe's letter to Fund investors on July 13, 2007. (Compl. ¶ 229.)  That letter was sent before the above disclosures.  Reliance on Kelsoe's letter, sent before the disclosures, was not justified after the disclosures were made.  Plaintiff could not intentionally close his eyes and refuse to investigate the risks disclosed to him.

Plaintiff has failed to plead reasonable reliance for his

19

Section 10(b) and Rule 10b-5 claim. Plaintiff's proposed amendment to extend the discovery date until at least August 23, 2011, is not supported by the facts alleged in Plaintiff's Complaint.

Plaintiff has not successfully stated a claim under Section 10(b) and Rule 10b-5. Because Plaintiff cannot successfully state a primary violation of Section 10(b) of the '34 Act, he cannot maintain his control person claims under Section 20 of the '34 Act. See 15 U.S.C. 77(o)(a); 15 U.S.C. § 78t(a); J&R Mktg., 549 F.3d at 398; PR Diamonds, 364 F.3d at 696.

Plaintiff's proposed amendments to his claims under the '34 Act would be futile.

### 4. Plaintiff's Section 11 Claim

The heightened pleading standards of the PSLRA do not apply to '33 Act claims. In re Regions Morgan Keegan Sec., Derivative, and ERISA Litig., 743 F.Supp.2d 744, 759 (W.D. Tenn. 2010) (internal citation omitted). When claims "sound in fraud," the pleading requirements of Rule 9(b) apply. Id. at 759-60 (internal citations omitted). Thus, "[a]t a minimum, Plaintiffs must allege the time, place and contents of the misrepresentations upon which they relied." Id., quoting Frank, 547 F.3d at 570.

Section 11 prohibits making "untrue statement[s] of material fact" or omitting statements of material fact in a

security's registration statement. 15 U.S.C. § 77k(a).   It
protects investors who "acquired" securities in reliance on the
representations contained in the registration statement.   Id.
The Amended Complaint identifies with particularity when the
supposedly misleading statements were made. (Compl. ¶¶ 5-8, 13
n.10.)   It also makes clear which statements are alleged to have
been misleading: for example, each of the Funds claimed to abide
by restrictions that prohibited it from holding more than 25% of
its assets in securities related to the same industry.   (Id. ¶
13 n.10.)   Plaintiff alleges that this statement was misleading
because, for example, RMH did not, in fact, abide by the
restriction. (Id. ¶ 14.)   The Court has allowed similar § 11
claims to proceed.  See  In re Regions, 743 F.Supp.2d at 760
(allowing plaintiffs to pursue § 11 claims for similar alleged
misrepresentations).   Defendants' argument that Plaintiff did
not plead his claims with particularity is not well taken.

     Defendants argue that Plaintiff has failed to plead loss
causation. (Funds Memo. at 17.)   Loss causation is not an
element of a § 11 claim; it is an affirmative defense unsuitable
for adjudication in a motion to dismiss.   15 U.S.C. § 77l(b);
see  Indiana State Dist. Council of Laborers v. Omnicare, 583
F.3d 935, 947 (6th Cir. 2009).   Amendment would not be futile as
to Plaintiff's Section 11 claim.   Plaintiff's Motion to Amend is
GRANTED as to Plaintiff's Section 11 claim.   Defendants' Motions

to Dismiss are DENIED as to Plaintiff's Section 11 claim.

> **5. Plaintiff Does Not Have Standing to Bring a Section 12(a)(2) Claim**

Plaintiff does not have standing to pursue a Section 12(a)(2) claim against RHY or Morgan Keegan. The Supreme Court in <u>Gustafson v. Alloyd Co., Inc.</u>, held that Section 12(a)(2) liability applies only when an investor bought stock directly in an offering. 513 U.S. 561, 571-72 (1995). "[P]urchasers in private or secondary market offerings are precluded from bringing actions under Section 12(a)(2)." <u>In re Sterling Foster & Co., Inc. Sec. Litig.</u>, 222 F.Supp.2d 216, 244-45 (E.D.N.Y. 2002) (collecting cases).

RHY conducted an initial public offering ("IPO") on January 23, 2006. (Compl. ¶ 8.) Morgan Keegan underwrote RHY's IPO. (<u>Id.</u>) The earliest date Plaintiff purchased shares in RHY is December 14, 2007. (E-Trade Invest. Acct. at 3, Exh. X, ECF No. 3-3.) There is no evidence that Plaintiff purchased RHY stock during RHY's IPO.

Plaintiff states that he "adequately set forth facts providing Plaintiff standing to bring Plaintiff's claims against Defendants, namely, that Plaintiff purchased shares of the Funds at issue in this case." (Pl. Resp. at 20.) Plaintiff alleges that "Plaintiff bring[s] this federal securities action on the publicly traded securities of . . . RHY, or pursuant or traceable to the Registration Statement, Prospectus, and

22

Statement of Additional Information . . . filed by RHY on or about January 19, 2006 . . . ." (Compl. ¶ 4.) Plaintiff alleges that he "purchased [RHY] shares issued pursuant or traceable to the RHY Offering Materials and was damaged thereby." (Id. ¶ 472.)

"The mere ability to trace back securities to the offering, without allegations of direct purchase, are insufficient." In re MF Global Holdings Ltd. Sec. Litig., 982 F.Supp.2d 277, 323 (S.D.N.Y. 2013). The court in In re Century Aluminum Co. Sec. Litig. opined that, "pleading purchases pursuant and/or traceable to" an offering are "conclusory allegations" and "insufficient to establish standing under Section 12(a)(2)." 749 F.Supp.2d 964, 977 (N.D. Cal. 2010). Plaintiff does not allege with particularity that he purchased his shares from RHY directly. Plaintiff does not have standing to bring a Section 12(a)(2) claim against RHY or Morgan Keegan. Amendment would be futile. Plaintiff's Motion to Amend is DENIED as to Plaintiff's Section 12(a)(2) claim. Defendants' Motions to Dismiss are GRANTED as to Plaintiff's Section 12(a)(2) claim.

## 6. Plaintiff's Section 15 Claim

Plaintiff has stated a primary claim under the `33 Act, and as a result, he may also state a claim under § 15 for control person liability. 15 U.S.C. § 77o(a); In re Regions Morgan

Keegan Open-End Mut. Fund Litig., 743 F.Supp.2d at 761. Section
15 places liability "jointly and severally" on any person who
"controls any person liable under section 11 or 12." 15 U.S.C. §
77o(a).   Whether a party exercised the requisite control is
subject to a factual analysis best saved for later
determination.   Amendment would not be futile as to Plaintiff's
Section 15 claim.   The Court GRANTS Plaintiff's Motion to Amend
his Section 15 claim and DENIES Defendants' Motions to Dismiss
Plaintiff's control person liability claim under the `33 Act.

    **V.   Conclusion**

    Plaintiff's proposed amendments to his Section 11 and 15
claims would not be futile.   Plaintiff's proposed amendments to
his State Law Claims, his Section 12(a)(2) claim, and his '34
Act claims would be futile.   Plaintiff's Motion for Leave to
File Amended Complaint is GRANTED as to his Section 11 and 15
claims under the '33 Act.   Plaintiff's Motion for Leave to File
Amended Complaint is otherwise DENIED.   Defendants' Motions to
Dismiss are DENIED as to Plaintiff's Section 11 and 15 claims
under the '33 Act.   Defendants' Motions to Dismiss are otherwise
GRANTED.


    So ordered this 4th day of August, 2014


                              /s/ Samuel H. Mays, Jr.

                              24

SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE